## MARYLAND CASUALTY CO. v. SPITZ.

(Circuit Court of Appeals, Third Circuit. October 29, 1917. On Motion for Reargument, December 31, 1917.)

### No. 2268.

1. INSURANCE ☞455—ACCIDENT INSURANCE—ACCIDENTAL MEANS OF DEATH.
   Under a policy insuring against injury or death effected through external, violent or accidental means, the means or cause of death must be accidental, and it is not enough that the death itself is accidental, in the sense of being unintended, unexpected, or unforeseen.

2. INSURANCE ☞455—ACCIDENT INSURANCE—"ACCIDENTAL" MEANS OF INJURY.
   Within a policy insuring against injury and death effected through accidental means, the word "accidental" means happening or coming by chance or without design, casual or fortuitous, and is opposed to design, so that a means is not accidental when employed intentionally, though it produces a result not expected or intended.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental.]

3. INSURANCE ☞455—ACCIDENT INSURANCE—ACCIDENTAL MEANS OF DEATH.
   Where a person, insured against death through accidental means, having a boil on his neck, rubbed it while his hands were soiled with blood and other substances, for the purpose of relieving an itchiness, thereby breaking the scab and permitting germs of erysipelas to enter, his death from erysipelas did not result from accidental means, as the breaking of the scab was a probable result, and one reasonably to be expected from his intentional act.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Irma Spitz against the Maryland Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed.

Maurice W. Sloan, of Philadelphia, Pa., for plaintiff in error.
Julius C. Levi and David Mandel, Jr., both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. Irma Spitz, the widow of Samuel Spitz and the plaintiff in this action, recovered on a policy in her favor, which insured her husband in the Maryland Casualty Company against injury and death, "effected directly and independently of all other causes through external, violent, and accidental means." He died while the policy was in force, and one of the questions in the court below was whether his death was "effected * * * through * * * accidental means." Before stating the facts it may be well to consider briefly the quoted words.

[1, 2] They do not mean simply that death shall be accidental; that is, unintended, or unexpected, or unforeseen; but that the means or the cause of death shall be accidental. It is this to which the policy directs particular attention, and if the means be not accidental the death is not insured against. The words "accident" and "accidental" have been many times considered, and the numerous cases on this subject need not be reviewed. Their general meaning is not in doubt, and the Standard Dictionary's definition of "accidental" will serve as well as another:

"Accidental: (1) Happening or coming by chance or without design; casual; fortuitous."

Accidental, therefore, is opposed to design, and a means is not accidental when it is employed intentionally, although it may produce a result not expected or intended. The intentional use of a means may produce more than one result; one may be likely, and another unlikely, to happen; but a result that is the natural, direct, and probable effect of such use must be regarded as intended, and cannot be regarded as accidental. The rule is thus stated in 14 R. C. L. § 418, p. 1238:

"While it may be true that an accident is an event which takes place without one's foresight or expectation, and is undesigned, it is not true that every unforeseen, undesigned, and unexpected event is an accident. A result which, though not designed, foreseen, or expected, is yet the natural and direct effect of acts voluntarily done or of conditions voluntarily assumed, cannot be said to be accidental."

See, also, the cases on this subject to be found in Fidelity, etc., Co. v. Carroll (1905) 143 Fed. 271, 74 C. C. A. 409, 5 L. R. A. (N. S.) 657, and note, 6 Ann. Cas. 955, and in Hutton v. States, etc., Co. (1915) 267 Ill. 267, 108 N. E. 296, 57 L. R. A. (N. S.) 127, and note, Ann. Cas. 1916C, 577. In the recent case of Insurance Co. v. Patterson (1914) 213 Fed. 597, 130 C. C. A. 177, this court had occasion to say:

"We agree that, when a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen and unintended happening. To illustrate from the facts before us: Since the deceased was attempting to start the engine of his car by turning the crank, whatever injury he might sustain from the ordinary strain of that operation would properly be regarded as the result of what he intended to do, and therefore would not be accounted accidental. But we can hardly suppose that he intended to slip and fall in the course of the operation, and therefore if he did slip and fall, and sustain-

ed injury as the direct result thereof, the happening would be unforeseen and unintended, and the injury would be accidental."

Turning now to the evidence, and giving it the weight most favorable to the plaintiff, we discover the facts to be as follows:

[3] The insured died of erysipelas on January 22, 1915. Late in December a boil or furuncle had appeared on the back of his neck, and for this he was treated at the office of a doctor. About January 1 his condition was improved. How long afterwards he wore a bandage does not clearly appear, but in any event a healthy scab had formed, the doctor had discharged him, and he was able to be about his business. He was a butcher, and on January 4 was engaged in cleaning chickens; a work that soiled his hands with blood and other substances. In this situation, his neck began to itch, and in order to relieve the irritation he put up his hand and rubbed or scratched the offending place (whether bandaged or not), with the result that he broke the scab. The only witnesses on this point were the plaintiff and the doctor, and the relevant testimony may be summarized as follows: On the morning of January 4 the deceased was at a block in the rear of his shop cleaning chickens, and his wife was in the front making out bills. She heard him say, "I have broken the scab on my neck," whereupon she turned and saw his hand rubbing his neck. She told him to quit it; his hand was not clean and had left some blood on the neck, and the scab was broken. Soon after the work of cleaning was done, he went upstairs and washed his neck with peroxide. The doctor testified:

"He told me he had rubbed it off or scratched it off the day prior. He said he rubbed his neck, it itched him, it was right in there; it hurt him and he found he had rubbed off the scab."

In a short time he become sick with erysipelas, and died from this disease on January 22. The verdict has established, and we therefore assume the further fact to be, that the germs of erysipelas entered the wound after the scab had been rubbed or scratched off, and that the disease then introduced was the immediate cause of death; so that the only question now is whether the means that opened the way for the germs to enter, namely, the rubbing or scratching of the boil, was an accidental means.

The court submitted this question to the jury, asking them to find whether the injury was inflicted accidentally, and in this submission we think there was error. As we read the testimony, nothing appears to show that the injury was inflicted by accidental means. The deceased rubbed or scratched his neck in the ordinary way; there is no evidence that he was disturbed or interfered with during the operation, and an ordinary and not unusual result followed; that is, he broke the scab. His hands were not clean; but he knew that fact, and must be held to the risk of such harm as might follow therefrom. In a word, he seems to have done just what he intended to do, namely, rub or scratch his neck to relieve the itching, and in our opinion breaking the scab during the process was a probable result, one reasonably to be expected. We think the defendant was entitled to binding instructions.

The judgment is reversed.

## On Motion for Reargument.

PER CURIAM. The motion for reargument suggests that U. S. Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, was probably overlooked, and relies upon that decision as a controlling authority. We did not overlook that case, however, but considered and still consider it to be distinguishable. On page 121 of the report in 131 U. S. (9 Sup. Ct. 762, 33 L. Ed. 60) the Supreme Court approves the following instruction as correct:

"That, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means."

And this instruction seems to us to cover the present situation, where, as we have already said:

" * * * Nothing appears to show that the injury was inflicted by accidental means. The deceased rubbed or scratched his neck in the ordinary way; there is no evidence that he was disturbed or interfered with during the operation, and an ordinary and not unusual result followed; that is, he broke the scab. His hands were not clean, but he knew that fact, and must be held to the risk of such harm as might follow therefrom. In a word, he seems to have done just what he intended to do, namely, rub or scratch his neck to relieve the itching, and in our opinion breaking the scab during the process was a probable result, one reasonably to be expected."

The motion is refused.