THE HON. WILLIAM L. HOLLOWAY,
THE HON. JOHN HURLY,
THE HON. JOHN A. MATTHEWS,
THE HON. CHARLES H. COOPER,
} Associate Justices.

---

TUTTLE, RESPONDENT, *v.* PACIFIC MUTUAL LIFE
INSURANCE CO., APPELLANT.

(No. 4,167.)

(Submitted June 3, 1920. Decided June 25, 1920.)

[190 Pac. 993.]

*Accident Insurance—Death—Notice—Waiver—Burden of Proof
—"Accident"—Definition—Liability of Insurer—Evidence
—Insufficiency.*

Accident Insurance—Death—Written Notice—Insufficiency.
　　1. Under a provision in an accident insurance policy requiring
immediate written notice, with full particulars of accidental death,
to the insurer at its home office, it was incumbent upon the bene-
ficiary, or someone acting in her behalf, within a reasonable time
after the disappearance of the insured during a snowstorm while

(121)

on a hunting trip in the mountains, to give some notice of the manner in which he met his death, she being convinced of his death a few days after the accident, although the remains were not found until some three years thereafter, and notice given seven months after knowledge thereof was insufficient.

[As to notice of accident within time required by terms of accident insurance policy as condition precedent to recovery, see note in **Ann. Cas. 1914D, 412.**]

Same—Written Notice to Home Office—Oral Notice to Agent Insufficient.

2. The requirement of immediate written notice to the home office of the insurer, of the accidental death of insured, held not to have been met by notice to the local agent of defendant during the course of an informal conversation.

Same—Waiver.

3. Where an insurance policy contains a provision against waiver by an agent of the insurer, it is both notice to and agreement by the policy-holder that no agent has authority to waive any of its conditions.

Same—Waiver—What Does not Constitute.

4. Letters in which insurer, among other things, denied liability on the ground that the requirement as to notice had not been met and in which it was expressly stated that nothing therein was to be construed as a waiver, *held* incapable of construction as a waiver.

Same—Waiver—Unreasonable Provision.

5. *Quaere:* Is a provision in an insurance policy that 'no waiver shall be valid unless in writing from the home office and signed by its president or vice-president, and the secretary or assistant secretary, a reasonable one?

Same—Manner of Death—Burden of Proof.

6. In an action to recover on a policy under which the liability of the insurer is specifically limited to insurance against death by accident resulting from bodily injuries and caused solely by external, violent and accidental means, independent of all other causes, within ninety days after the injury, the plaintiff has the burden of proving not only that death ensued, but also that it was caused as provided in the policy and occurred within the time limited after the injury.

Same—"Accidental" Death—Definition.

7. Where, in the act which precedes an injury resulting in death, something unforeseen or unusual occurs which produces the injury, the injury is accidental within the meaning of an accident policy; death resulting from voluntary physical exertion, from intentional acts of the insured, from disease, or from the vicissitudes of climate or atmosphere not falling within the definition.

Same—Accidental Death of Insured—Evidence—Insufficiency.

8. Evidence that insured who, while on a hunting trip, left camp in a snowstorm and perished, his remains being found about three years thereafter, two miles from camp, at a place where he could not have fallen to his death, his rifle not being near the body and a pistol being in his pocket, *held* to have been insufficient to show that death resulted from external, violent and accidental means within the meaning of an accident insurance policy, there being no presumption that he met death by such means.

Appeal and Error—Judgment Unsupported by Evidence—Reversal.
    9.  A judgment based upon a finding of the district court, in an
    action on an insurance policy tried by it without a jury, unsupported by evidence, will be reversed.
    [On the question as to when strict compliance with requirements
    as to time of notice in accident or health policy is excused, see
    notes in 18 L. R. A. (n. s.) 109; 27 L. R. A. (n. s.) 319.]

*Appeal from District Court, Jefferson County; Joseph C. Smith, Judge.*

ACTION by Mattie A. Tuttle against the Pacific Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions to enter judgment for defendant.

*Messrs. Day & Mapes,* for Appellant, submitted a brief; *Mr. E. C. Day* argued the cause orally.

The burden of proof was upon the plaintiff to show not only the disappearance or even the death of the assured, but also that the death was caused by violent, accidental, and external means, independent of any other cause within ninety days of the injury. The plaintiff must not only show death, but death resulting from accident within the meaning of the policy. (*Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800, 147 Pac. 1175; *Rock* v. *Travelers' Ins. Co.,* 172 Cal. 463, L. R. A. 1916E, 1196, 156 Pac. 1029; *Vernon* v. *Iowa State Travelers' Assn.,* 158 Iowa, 597, 138 N. W. 696; *Schmohl* v. *Travelers' Ins. Co.* (Mo. App.), 177 S. W. 1108; *Wilkinson* v. *Aetna Life Ins. Co.,* 240 Ill. 205, 130 Am. St. Rep. 269, 25 L. R. A. (n. s.) 1256, 88 N. E. 550; *Wright* v. *Order of United Commercial Travelers'* etc., 188 Mo. App. 457, 174 S. W. 833; *Laessig* v. *Travelers' Protective Assn.,* 169 Mo. 272, 69 S. W. 469; *Smith* v. *Travelers' Ins. Co.,* 219 Mass. 147, L. R. A. 1915B, 872, 106 N. E. 607; *Rock* v. *Travelers' Ins. Co.,* 172 Cal. 463, L. R. A. 1916E, 1196, 156 Pac. 1029.)

In the case of *Pledger* v. *Business Men's Acc. Assn.* (Tex. Civ.), 197 S. W. 889, the supreme court of Texas in speaking of the distinction between "accidental death" and "death

by accidental means," says: "Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and undesigned result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done." The policy in suit provides that the death must have resulted from bodily injuries caused by accidental means.

"Death, engendered by exposure to heat, cold, damp, the vicissitudes of climatic or atmospheric influence, cannot, we think, properly be said to be accidental unless at all events the exposure is itself brought about by circumstances which may give it the character of accident." (*Sinclair* v. *Maritime Passengers' Assur. Co.*, 3 El. & El. 478, 121 Eng. Reprint, 521; *Dozier* v. *Fidelity & Casualty Co.*, 46 Fed. 446, 13 L. R. A. 114; *Elsey* v. *Fidelity & Casualty Co.* (Ind. App.), 109 N. E. 413; *Schmid* v. *Indiana etc. Acc. Assn.*, 42 Ind. App. 483, 85 N. E. 1032; *Stone* v. *Fidelity & Casualty Co.*, 133 Tenn. 672, Ann. Cas. 1917A, 86, L. R. A. 1916D, 536, 182 S. W. 252; *Morse* v. *Commercial etc. Acc. Assn.*, 212 Mass. 140, 40 L. R. A. (N. S.) 135, 98 N. E. 599.)

The requirement of the policy that immediate notice shall be given is a condition precedent to the creation of liability or the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action. (*Hatch* v. *United States Casualty Co.*, 197 Mass. 101, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, 14 L. R. A. (n. s.) 503, 83 N. E. 398.) There is a class of cases which hold that where death results from the accident no notice of the accident need be given, provided that notice of the death be given. (*Western Commercial Travelers' Assn.* v. *Smith*, 85 Fed. 401, 40 L. R. A. 653, 29 C. C. A. 223; *Horsfall* v. *Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 98 Am. St. Rep. 846, 63 L. R. A. 425, 72 Pac. 1028.) It will be noted, however, that these are cases of accidents apparently harmless, resulting in disease from which death later follows. The lan-

guage of the opinions must be interpreted having in view the circumstances to which it relates.  There is another class of cases which hold that the time within which notice must be given does not begin to run until the discovery of the facts upon which the claim is based.  (*Trippe* v. *Provident Fund Soc.,* 140 N. Y. 23, 37 Am. St. Rep. 529, 22 L. R. A. 432, 35 N. E. 316; *Munz* v. *Standard L. A. Ins. Co.,* 26 Utah, 69, 99 Am. St. Rep. 830, 62 L. R. A. 485, 72 Pac. 182; *Jennings* v. *Brotherhood Acc. Co.,* 44 Colo. 68, 13 Am. St. Rep. 109, 18 L. R. A. (n. s.) 109, 96 Pac. 982.)  There is also a class of cases where some obstacle intervenes such as insanity, preventing the giving of notice, and it is held that in such cases the time within which notice was to be given does not begin to run until the removal of the obstacle.  (*Woodmen Acc. Assn.* v. *Pratt,* 62 Neb. 673, 89 Am. St. Rep. 777, 55 L. R. A. 291, 87 N. W. 546; *Behlmer* v. *Grand Lodge,* 109 Minn. 305, 26 L. R. A. (n. s.) 305, 123 N. W. 1071.)  But all of these cases are distinguishable from the present case, in this, that the evidence of the death from accidental causes of the assured consists of the facts surrounding his disappearance and the storm, which facts were as well known in November, 1910, as they were in June, 1911.  The subsequent discovery of the body was merely confirmatory evidence of the circumstances upon which the claim is based.  If the time for giving notice ran from the discovery of the body, then notice was not given at all within the meaning of the provisions of the policy.

Failure to give notice of loss within a reasonable time as required by the term of the policy is not waived by the subsequent denial of all liability on the ground that the loss is not covered by the policy.  (*Aetna Life Ins. Co.* v. *Fitzgerald,* 165 Ind. 317, 112 Am. St. Rep. 232, 6 Ann. Cas. 551, 1 L. R. A. (n. s.) 422, 75 N. E. 262.)  In order to constitute a waiver of proof of death there must be a denial of liability upon other grounds than failure to make proof before the time has expired within which proofs of death might be made within the terms of the policy.  (*Burlington Ins. Co.* v. *Ross,*

48 Kan. 228, 29 Pac. 469; *State Ins. Co.* v. *School District,* 66 Kan. 77, 71 Pac. 272; *Continental Ins. Co.* v. *Chance,* 48 Okl. 324, 150 Pac. 114.) If the plaintiff failed to give notice of the accident within a reasonable time, or failed to make the affirmative proof of death required by the policy, the denial of liability by the company thereafter would not constitute a waiver. (*Employers' Liability Assur. Corp.* v. *Rochelle,* 13 Tex. Civ. 232, 35 S. W. 869.)

*Messrs. D. M. and J. E. Kelly* submitted a brief in behalf of Respondent; *Mr. J. E. Kelly* argued the causes orally.

The rule seems to be that where the effect is the natural and probable consequence of an act, it cannot be said to be produced by accidental means. (1 Corpus Juris, 426; *United States Mut. Acc. Assn.* v. *Barry,* 131 U. S. 100, 33 L. Ed. 60, 9 Sup. Ct. Rep. 755 [see, also, Rose's U. S. Notes]; *Hastings* v. *Travelers' Ins. Co.,* 190 Fed. 258.) But when it is not the natural and probable consequences, the rule is different and it is considered accidental. (1 Corpus Juris, 427; *Travelers' Assn.* v. *Insurance Co.,* 10 Manitoba, 537.)

The assured came to his death by exposure, the exposure coming about by his being lost; hence the cause of his exposure was accidental. (1 Corpus Juris, 432; *Manufacturers' Acc. Indemnity Co.* v. *Dorgan,* 58 Fed. 945, 22 L. R. A. 620, 7 C. C. A. 581; *United States Mut. Acc. Assn.* v. *Hubbell,* 56 Ohio St. 516, 40 L. R. A. 453, 47 N. E. 544; *Travelers' Ins. Co.* v. *Rosch,* 23 Ohio C. C. 491; Fuller on Accident Insurance, 37.)

It was impossible for plaintiff to present notice of accident or proof of injury or death, because under the peculiar circumstances of this case it was impossible to be certain that death had ensued or to be aware of the particulars of the accident. Consequently the time for serving notice of accident and proof of death did not begin to run until the date of the discovery of death or of such particulars. (1 Cyc. 274, 374; Fuller on Accident Insurance, 377; *Kentzler* v. *American*

*Mut. Acc. Assn.*, 88 Wis. 589, 43 Am. St. Rep. 934, 60 N. W. 1002; *Trippe* v. *Provident Fund Society*, 140 N. Y. 23, 37 Am. St. Rep. 529, 22 L. R. A. 432, 35 N. E. 316; *Peele* v. *Provident Fund Society*, 147 Ind. 543, 44 N. E. 661, 46 N. E. 990; *Jennings* v. *Brotherhood Acc. Co.*, 44 Colo. 68, 13 Am. St. Rep. 109, 18 L. R. A. (n. s.) 109, 96 Pac. 982; *Pacific Mutual Life Ins. Co.* v. *Adams*, 27 Okl. 496, 112 Pac. 1026; *Ewing* v. *Commercial Travelers' Mut. Acc. Assn.*, 170 N. Y. 590, 63 N. E. 1116.)

On the question of notice of accident, the better rule seems to be that it applies only to the assured and not to the beneficiary; hence it is our position that plaintiff was not estopped from enforcing her claims under the policy for the reasons: (1) That as beneficiary, she had no right or title under the same by the mere happening of the accident, her right thereunder being inchoate until the death of the insured could be established by satisfactory proof, and therefore she could not give notice of the accident until the death of the assured. (Fuller on Accident Insurance, 389, 390; *Horsfall* v. *Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 98 Am. St. Rep. 846, 63 L. R. A. 425, 72 Pac. 1028.)   (2) Under the particular wording of this policy, two classes of notices are required—the one to be given by the assured, the other by the beneficiary within a certain time after death where the accident results fatally. (*Western Commercial Assn.* v. *Smith*, 85 Fed. 401, 40 L. R. A. 653, 29 C. C. A. 223; *Odd Fellows Fraternal Acc. Assn.* v. *Earl*, 70 Fed. 16, 16 C. C. A. 596; 1 Corpus Juris, 474.)   (3) Under the policy and the construction urged by the defendant, plaintiff's rights as beneficiary would be practically nullified in this case, and in all cases where the assured does not become disabled until some time after the date of the accident or until the period of giving the notice of injury has expired. (*Crotty* v. *Continental Casualty Co.*, 163 Mo. App. 628, 146 S. W. 833; *Maryland Casualty Co.* v. *Burns*, 149 Ky. 550, 149 S. W. 867.)

Compliance with the conditions of the policy requiring the claimant to furnish notice and proofs of death or injury, as well as any defects in the notice or proofs, may be waived by the insurer. (*Hurt* v. *Employers' Liability Assur. Corp.*, 122 Fed. 828; *Preferred Accident Insur. Co.* v. *Fielding*, 35 Colo. 19, 9 Ann. Cas. 916, 83 Pac. 1013; *Fidelity & Casualty Co.* v. *Cooper*, 137 Ky. 544, 126 S. W. 111; *Da Rin* v. *Casualty Co.*, 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164, 108 Pac. 649.)

The beneficiary will be excused from furnishing proofs of death where, upon notice to the insurer requesting blank forms, the company either refuses to provide the necessary blanks or delays sending them until after the time has elapsed within which, under the policy, the final proofs must be made. (*Standard Life & Acc. Ins. Co.* v. *Schmaltz*, 66 Ark. 588, 74 Am. St. Rep. 112, 53 S. W. 49; *Union Casualty etc. Co.* v. *Mondy*, 18 Colo. App. 395, 71 Pac. 677; *Metropolitan Casualty Ins. Co.* v. *McAuley*, 134 Ga. 165, 67 S. E. 393; *National Masonic Acc. Assn.* v. *McBride*, 162 Ind. 379, 70 N. E. 483; Fuller on Accident Insurance, 414.)

The calling for other information denying liability on other grounds is sufficient proof of a waiver and amounts to an estoppel. (1 Cyc. 278, 279.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was brought by plaintiff on an accident policy carried by her son, Ora Tuttle. The case was tried to the court sitting without a jury, and resulted in a judgment in favor of the plaintiff for the amount of the policy.

The undisputed facts are as follows: In 1908 Ora Tuttle was insured by defendant company "against the effects of bodily injuries sustained during the term of this policy and caused solely by *external, violent and accidental means.* * * * And if death shall result from such injuries within ninety days, independent of all other causes, the company will

pay the principal sum of fifteen hundred dollars.'' The
policy was in full force and effect throughout the year 1910.
In November of that year, Ora Tuttle, his brother R. S.
Tuttle, and three other young men went into the park district
in Gallatin county on a hunting trip, and established a camp
at Grayling. On the morning of the 21st Ora Tuttle left
camp alone on the trail of an elk; it was then snowing hard,
and a man could not be distinguished at a hundred yards.
The storm continued throughout the day and night, the
temperature remaining slightly below the freezing point, not
cold enough to freeze a person out in the storm. The next
day was fairly pleasant, but squally, and ten to twelve inches
of snow had then fallen. The second day a heavy storm
broke, and continued for eight or ten days, and the snow then
appeared to be several feet deep. On leaving camp, Tuttle
took with him a rifle, an automatic pistol, and provisions suffi-
cient for the day. As night approached and he did not re-
turn, his companions instituted a search for him, building
signal fires and discharging their rifles, but without receiving
any response. The search was continued until the following
February, but no trace of the missing man was found. On
October 2 or 3, 1913, his remains were found in a small park
about two miles from the location of the camp. A small can-
yon intervened, necessitating a detour, requiring one to travel
approximately five miles from the camp to the place where the
remains were found. R. S. Tuttle identified the clothing and
shoes as those of Ora Tuttle. His watch was still in the vest
pocket and his automatic in the trousers pocket; the rifle was
nowhere in the vicinity. Only the larger bones of the body
remained; most of these were with the clothing. The skull,
however, was found in the shallow gulch some 30 feet distant
and the shoes Tuttle had worn were found near the skull.
There was no cliff or other point from which deceased could
have fallen to his death. The remains were taken to White-
hall, and on the ninth day of October, 1913, were buried.

58 Mont.—9

The plaintiff testified that shortly after the disappearance of Ora Tuttle she had a conversation with the local agent of the company and that "I asked him if the boy was dead if I would have to write the company for proofs—for blanks anyway. He said no, he would attend to that himself. And then I asked him if I would have to keep his payments up. He said no, I would not have to do that. He assured me that he did not think the boy was dead; that he thought he would come home after a little."

On June 19, 1911, Ike E. O. Pace, Esq., an attorney at Whitehall, notified the company by letter of the disappearance of Tuttle and of the search made for his remains, and closed with the statement: "There is no doubt, however, that the young man is dead, and probably was either accidentally shot or received some serious fall, or was attacked by some wild animal which accident resulted in his death."

On October 20, 1913, plaintiff notified the local agent in writing of the finding of the body, and requested instruction as to what was required of her as to "proof and statement." The letter was forwarded to and answered by the head office, to the effect that the last policy carried by Ora Tuttle was in 1910, and that "the conditions of it are such that it would appear that no claim exists thereunder." The plaintiff replied, reciting her conversation in 1910 with the local agent, and stating that she would be glad to hear further from the company. Thereafter, on January 30, 1914, J. L. Wines, Esq., an attorney, took the matter up with the company, and was advised in writing that "It appears impossible to show the manner of such death. Such being the fact, it is impossible to determine whether the case falls within the terms of the policy, said policy being one of limited liability. Furthermore, it appears from an examination of the files that the provisions of the contract in regard to giving notice and submitting proofs have not been complied with. You will, of course; understand that the action of the company in writing you as

above is not to be construed as a waiver or impairment of any defense which it may have to any action upon the policy.''

The amended complaint alleges that ''Ora Tuttle came to his death by bodily injuries sustained, caused by external, violent, and accidental means, and resulting in his death and disability, independent of all other causes.'' It then recites the facts, substantially as hereinbefore stated. It then alleges the conversation with the local agent and the subsequent writing of the letter referred to above, with the contents, but continuing, ''and asking him if he would look after the matter as he said he would.'' This latter request does not, however, appear in the letter which was introduced in evidence. The complaint then alleges the notice of June 19, 1911, and, after stating the contents, avers that plaintiff ''At the same time requested that proper blanks be forwarded to her to make the necessary written affirmative proof of death.'' The letter, also introduced in evidence, does not contain the request quoted above from the complaint.

The complaint further alleges that notice of death was given and liability denied within the 120 days as required by the policy, ''after ascertaining the fact of death''; that defendant failed, neglected and refused to furnish the blanks, and plaintiff was unable, therefore, to furnish the proof required, and was thereby excused from furnishing other proof than that submitted, and that defendant waived any advantage that it might have claimed by reason of the failure of plaintiff.

The defendant demurred to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action, pointing out the failure to state in what manner the injuries were sustained, or that they were caused by external, violent and accidental means; that the complaint shows a failure to give the required notices, and does not state facts sufficient to constitute a waiver. The demurrer was overruled, and defendant answered, and thereafter the cause was tried to the court sitting without a jury. The plaintiff having rested, defendant moved the court to find the issues in

its favor, which motion was denied. The defendant introduced no evidence, and the court made its findings, to the effect that Ora Tuttle came to his death by external, violent, and accidental means on or about the twenty-second day of November, 1910, at which time he was insured in defendant company, and that plaintiff was his beneficiary; that the facts did not come to the knowledge of plaintiff until October, 1913, and in the interim plaintiff did not know the actual fate of Ora Tuttle, or that he was in fact dead; that after the discovery of his death, and within the time provided in the policy, plaintiff duly notified defendant of the death; that the amount of the policy was due and payable January 30, 1914, at which time defendant refused payment. The court thereupon recited its conclusions of law that the plaintiff was entitled to a judgment, and entered judgment accordingly. The appeal is from the judgment.

The specifications of error herein are that the court erred in (1) overruling the demurrer to the amended complaint; (2) refusing to grant the motion to find the issues for defendant; (3) finding that Ora Tuttle came to his death by external, violent and accidental means on or about November 22, 1910; and (4) finding as a conclusion of law that plaintiff was entitled to judgment.

1. In overruling the demurrer the court evidently considered the general allegations of the complaint sufficient, to be thereafter aided by proof of specific facts, and disregarded the recitation of evidence as surplusage. The case was thereafter tried, and all the facts, concerning the death of Tuttle, that could possibly be developed were brought out. No good purpose could now be served by a new trial, and we are of the opinion that the matter should be disposed of on its merits. We will therefore pass, without deciding, the question of the correctness of the court's ruling on the demurrer.

2. The motion to find the issues in favor of the defendant is based on the ground of alleged insufficiency of the evidence to establish (a) that death resulted from injuries sustained,

caused solely by external, violent and accidental means; (b) that immediate written notice of the accident was given in accordance with the terms of the contract; or (c) that written affirmative proof of death by such means was made within the time required by the terms of the contract; or (d) that there was a waiver of such conditions by the company. The grounds designated (a), (b) and (c), are so closely allied that they will be considered together.

The policy here under consideration contains the following provisions:

"6. The claimant must deliver to the company at its home office in Los Angeles, California, immediate written notice of any accident, with full particulars and name and address of insured, and deliver to the company at its said home office written affirmative proof of such injuries or death and whether said injuries or death were caused by external, violent and accidental means within the terms of this policy; and so furnish such proof as to death * * * within one hundred and twenty days from time of accident; or no claim shall arise or be valid."

"9. No alteration or waiver of the conditions or provisions of this policy or said application shall be valid unless in writing at the company's home office and signed by the president or vice president and also the secretary or assistant secretary; nor shall notice to or knowledge of any person of anything not written in said application be held to effect a waiver or estoppel upon the company, or affect the provisions of this contract."

While, in this state, "time is never considered as of the [1] essence of a contract, unless by its terms expressly so provided" (Rev. Codes, sec. 5047), and "any succinct and intelligent statement, giving the information called for by the stipulation in the policy, whether verified or not, or whether by eyewitness or not, is sufficient to put the insurer upon inquiry to determine whether he is liable" (*Da Rin* v. *Casualty Co.*, 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.)

1164, 108 Pac. 649), under the above-quoted provision 6 some notice, "with full particulars and the name and address of insured," should have been given to the company at its "home office." And while the beneficiary did not know, immediately after the accident, the exact facts concerning the manner in which insured had met his death, she was, within a reasonable time after his disappearance, fully convinced of his death, and, under the terms of the contract, either she, or someone acting in her behalf, should have given the required notice to the company at its home office.

In the absence of proof that the facts related were communicated to the home office, notice to the local agent during the informal conversation held shortly after the disappearance of Ora Tuttle, could not, under any circumstances, be held to meet the requirement of the contract that immediate notice be given to the *"company at its home office."* As was said in *Hatch* v. *United States Casualty Co.,* 197 Mass. 101, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, 14 L. R. A. (n. s.) 503, 83 N. E. 398: "The promise to insure is not absolute but conditional. The condition is that the notice, whatever it may be and by whomsoever or whenever given shall be given. It is a condition precedent to the creation of liability or the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action. * * * If it be said, as it sometimes is, that such a defense is purely technical, the answer (if one is needed) is that the provision for notice is of the essence of the contract, that it is manifestly an important provision for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid. It is a provision which tends to the elucidation of the truth when the claim for indemnity is made. It was one to which the insured agreed, and it is not unreasonable."

The giving of the notice of the accident, and the forwarding of affirmative proof of death, are two separate and distinct obligations. Under the circumstances of this case, the latter

obligation could not be met until after the discovery of the body and a determination of the cause of death, if it was then possible; but the fact of the accident, if any, with its attendant circumstances, was known to plaintiff within a few days after the disappearance, but no notice thereof was given until June 19, 1911, nearly seven months thereafter.

In the case of *Foster* v. *Fidelity & Casualty Co.*, reported in 99 Wis. 447, 40 L. R. A. 833, 75 N. W. 69, it was held that where the beneficiary satisfied herself after investigation that her son's death was accidental, but did not give notice until twenty-nine days thereafter, she did not bring herself within the requirement of "immediate notice."

There is a class of cases which holds that the time within which notice must be given does not begin to run until the discovery of the facts upon which the claim is based. (*Trippe* v. *Provident Fund Society*, 140 N. Y. 23, 37 Am. St. Rep. 529, 22 L. R. A. 432, 35 N. E. 316; *Munz* v. *Standard L. A. Ins. Co.*, 26 Utah, 69, 99 Am. St. Rep. 830, 62 L. R. A. 485, 72 Pac. 182; *Jennings* v. *Brotherhood Acc. Co.*, 44 Colo. 68, 13 Am. St. Rep. 109, 18 L. R. A. (n. s.) 109, 96 Pac. 982. But these cases are of little assistance here; for leaving out the question of death, with which this preliminary notice is not concerned, the facts relating to the accident, if any, were known to plaintiff at the time she was notified of the loss of her son in a storm.

The plaintiff contends that she was not required to give notice until after the establishment of the fact that the assured was dead. If this were true, no such notice as is required by the terms of the contract was ever given, as it would exclude the letter of June 19, 1911, which contained the only written notice furnished the company at any time, attempting a recital of the facts. There is no evidence of a compliance with the requirement of written affirmative proof of death; the letter of October 20, 1913, written to the local agent, but forwarded to the home office, goes no further than to state that the "remains of my son Ora Tuttle have been

found." What communication was made by Attorney Wines is not disclosed, and appears to have been made orally, while the stipulation in the contract is that it be made in writing, and was made more than three months after the discovery of the body.

As to waiver, the insurer and the insured mutually agreed [3] that "no waiver. * * * shall be valid unless in writing at the home office and signed by the president or vice president and also the secretary or assistant secretary." Where the policy contains a provision against waiver by an agent, it is both notice to and agreement by the policy-holder that no agent of the company has authority to waive the condition. (*Collins* v. *Metropolitan Life Ins. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092; *Travelers' Ins. Co.* v. *Meyers,* 62 Ohio St. 529, 49 L. R. A. 760, 57 N. E. 458.)

Three letters, admittedly coming from the home office, were [4, 5] introduced, and the material parts of their contents have been heretofore quoted. No one of these letters is signed as provided for in the policy; but we shall not pass upon the question as to whether such requirement is reasonable or not, as, in our opinion, nothing contained in the letters could constitute a waiver, even though signed.

3. The first ground mentioned in the motion for findings in favor of the defendant, and the third and fourth assignments of error, are based on the lack of evidence to establish death by external, violent and accidental means.

The evidence, heretofore quoted, establishes the fact of death, but the manner in which the insured met his death is [6] left entirely to conjecture. The policy on which the action was brought is not an ordinary life insurance policy, but an accident policy, in which the liability of the company is specifically limited to insurance "against the effect of bodily injuries sustained during the term of the policy, and caused solely by external, violent and accidental means," and, under the terms of which, "if death shall result from such injuries within ninety days, independent of all other causes, the com-

pany will pay the principal sum of fifteen hundred dollars.'' The burden of proof was upon the plaintiff to show, not only the death of the insured, but also that the death was caused by injuries sustained by the insured by external, violent, and accidental means, and resulted within ninety days after the injury. In other words, the plaintiff must not only show death, but death resulting from accident within the meaning of the policy. (*Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800, 147 Pac. 1175; *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 463, L. R. A. 1916E, 1196, 156 Pac. 1029; *Vernon* v. *Iowa State T. Assn.*, 158 Iowa, 597, 138 N. W. 696; *Wilkinson* v. *Aetna Life Ins. Co.*, 240 Ill. 205, 130 Am. St. Rep. 269, 25 L. R. A. (n. s.) 1256, 88 N. E. 550; *Wright* v. *Order of United Commercial Travelers' etc.*, 188 Mo. App. 457, 174 S. W. 833; *Laessig* v. *Travelers' Prot. Assn.*, 169 Mo. 272, 69 S. W. 469; *Hatch* v. *United States Casualty Co.*, 197 Mass. 101, 104, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, 14 L. R. A. (n. s.) 503, 83 N. E. 398; *Smith* v. *Travelers' Ins. Co.*, 219 Mass. 147, L. R. A. 1915B, 872, 106 N. E. 607.)

In the case of *Laessig* v. *Travelers' Prot. Assn.*, *supra,* the court said: ''The proof of accidental death is the essential prerequisite and condition precedent to the right to recover on an accident insurance policy. This is the distinguishing feature between accident policies and ordinary life policies. In the latter, to make out a *prima facie* case it is only necessary for the plaintiff to show the contract after the death, * * * whereas, in the former, the condition precedent to a recovery is not simply the natural death, but the death from accident. Hence in suits upon accident policies the burden of proof is upon the plaintiff (subject to the limitation that it is not presumed as a matter of law that the deceased took his own life or was murdered) to show that the death was caused by external violence and by accidental means. This is exactly what the policy or contract itself provides. And this is the rule laid down by Mr. Justice Harlan, in the supreme court of the United States, in *Travelers' Ins. Co.* v. *McConkey*, 127 U. S.

661, 32 L. Ed. 308, 8 Sup. ·Ct. Rep. 1360 [see, also, Rose's U. S. Notes].  *  *  *  As mere proof of injury in a damage case will not entitle plaintiff to recover, but negligence of the defendant must be shown, so in a suit upon an accident policy mere proof of injury or death will not entitle the plaintiff to recover, but the injury or death must be shown to be ·due to an accidental cause."

There is a clear distinction between accidental death and death by accidental means; the latter only is covered by the policy. Thus in *Smith* v. *Travelers' Ins. Co., supra,* we find the rule stated as follows: "It is not sufficient that the death or the illness that caused the death may have been an accidental result of the external cause, but that cause itself must have been, not only external, and violent, but also accidental [citing a long list of authorities]. The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental. Death resulting from voluntary physical exertion or from intentional acts of the insured is not accidental, nor is disease or death caused by the vicissitudes of climate or atmosphere the result of an accident; but where, in the act which precedes an injury, something unforeseen or unusual occurs which produces the injury, the injury results through accident."

In *Sinclair* v. *Maritime Passengers' Assur. Co.*, 3 El. & El. 478, 121 Eng. Reprint, 521, the court says: "We cannot think that disease produced by the action of a known cause can be considered as accidental. Thus disease or death, engendered by exposure to heat, cold, damp, the vicissitudes of climatic or atmospheric influences, cannot, we think, properly be said to be accidental unless brought about by circumstances which may give it the character of accident."

Respondent cites a number of cases in support of the contention that the circumstances in this case supply this element. But in each of these cases there is shown the element of accident. For example, in *Travelers' Assn.* v. *Insurance Co.*, 10

Manitoba, 537, the death of the insured by freezing was found to have been caused by prolonged exposure *due to the breaking down of the conveyance in which he was riding.*

In *Manufacturers' Acc. Indemnity Co.* v. *Dorgan,* 58 Fed. 945, 22 L. R. A. 620, 7 C. C. A. 581, it was held that a drowning, caused by a temporary trouble to which the insured was not subject, but which was entirely unusual and uncommon, whereby he fell into the water, was "accidental."

In *United States Mut. Acc. Assn.* v. *Hubbell,* 56 Ohio St. 516, 40 L. R. A. 453, 47 N. E. 544, drowning while crossing a ford, which insured had safely crossed on previous occasions, and which was entered only with the apprehension of getting wet, was held to be "accidental."

It will be noted, however, that in each of the cases the [8] "accidental means" which brought about the death was shown. Here the only evidence is that the insured left camp in a heavy snowstorm, following the trail of an elk; he had been reared in the mountains; the weather was not cold enough to freeze a man, and the storm did not increase in violence. The body was found but two miles from camp, though insured would have had to walk five miles in order to reach the spot, a distance which could not have exhausted a strong young man; there was no place from which insured could have fallen to his death. The rifle he carried on leaving camp was not with the remains, and the automatic was still in his pocket. At the time the body was found it could not, of course, be ascertained whether there had been any marks on it. While there is no presumption that a man found dead has been murdered or has committed suicide, as was stated in *Laessig* v. *Travelers' Prot. Assn., supra,* it is equally true that no presumption can be indulged in that insured met death by external, violent and accidental means.

The insured, having contracted that the company should be liable only in case of death from injuries caused solely by external, violent and accidental means, the burden of proving that the case is within the terms of the policy rested upon

plaintiff, and this burden, in our opinion, was not sustained. Conjectural causes of death, which do not fall within the terms of the policy, as that insured died of heart failure or apoplexy, are as reasonable, under the evidence adduced, as those which fall within those terms.

While we are mindful of the rule that this court will not [9] disturb the findings of the trial court where there is substantial evidence to support them, in this case there is no evidence to support the finding "that Ora Tuttle came to his death by external, violent and accidental means on or about the twenty-second day of November, 1910."

The judgment of the district court of Jefferson county is therefore reversed, and the cause remanded to the trial court, with the direction to enter judgment in favor of the defendant.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.