## BRUNSON v. MUTUAL LIFE INS. CO. OF NEW YORK.*

### No. 5517.

Court of Appeal of Louisiana: Second Circuit.

Dec. 3, 1937.

Rehearing Denied Jan. 3, 1938.

Writ of Certiorari and Review Granted Feb. 7, 1938.

*Judgment on writ of review by Supreme Court April 4, 1938.

Kennon & Kitchens, of Minden, for appellant.

Montgomery & Montgomery, of New Orleans, and W. F. M. Meadors, of Homer, for appellee.

DREW, Judge.

Plaintiff instituted this suit claiming double indemnity on a policy of insurance issued on the life of her deceased husband. For a cause of action she alleged:

"1. That her husband, Charlie A. Brunson, was issued a policy in the Mutual Life Insurance Company of New York on November 29, 1927. Said policy bears number 3,903,856; that a photostatic of policy is annexed hereto and made a part hereof; that all premiums were paid and the policy was in full force at the time of his death.

"2. That her husband, Charlie A. Brunson, died on the 20th day of March, 1936, at his domicile in Webster Parish, Louisiana. His death came violently and suddenly·and within the double indemnity provisions of the said attached policy.

"3. That the said company has paid $2,000 on the first amount of the said policy which your petitioner accepted without prejudice to her right to collect the remaining $2,000 due under the double indemnity feature of said policy. That said company owes petitioner $2,000. That amicable demand has been made without avail.

"4. That her husband was not sick prior to his said death and was in the enjoyment of the same· state of health and physical fitness that had been his for years. That on the 19th day of March, 1936, he went to his dentist in Minden, Louisiana, who extracted several of his teeth, preparatory to the making of a plate.

"That said extractions constituted an external and violent injury to his jaws and gums; that through unexpected and accidental complications from said extractions, he came to his death the following day.

"That the pulling of said teeth was not intended to result in serious and certainly not a fatal conclusion. However, said extractions did result in his death.

"5. That on the morning of March 20th, 1936, he arose about six o'clock A. M. with an unusual pain around his heart, but made coffee as usual. That he ate his breakfast about seven-thirty A. M., and worked during the morning. That he came in at noon and ate his noonday meal, but lay down for a time. That he sent in to Minden for Dr. W. McDade. That evening he did not feel well and ate a light supper; that after supper he took a tablet prescribed by Dr. McDade, Minden, Louisiana. That about an hour later he was talking of taking another tablet when he suddenly and without warning died.

"6. That his death resulted solely from bodily injury through the external injury and the violent and accidental and unexpected outcome of the extraction of his teeth."

Defendant filed an exception of no cause or right of action to said petition, and the lower court sustained the exception and dismissed plaintiff's suit. From that judgment plaintiff prosecutes this appeal.

Plaintiff claims double indemnity under the following provisions of the policy:

"The Double Indemnity will be payable upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that the Double Indemnity shall not be payable if death resulted from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or mental infirmity.

"The company shall have the right and opportunity to examine the body and to make an autopsy unless prohibited by law."

■ The only thing unexpected alleged by plaintiff to have occurred is the sudden death of her husband. He voluntarily went to the dentist and had several teeth extracted. It is not alleged that any unexpected accidental element intervened between the time he entered the dentist's chair and left it. She does not allege the dentist made any mistake or slip or that

the instruments used in the extractions were not sterile. In fact, nothing unusual or unlooked for happened while his teeth were being drawn. He went there for that purpose and the teeth were extracted in the usual and customary manner. Decedent knew that the pulling of several teeth would cause injury to his jaws and gums for a reasonable time. There was no accident in the extraction. It was exactly what he intended and any ill results which followed were not caused by accidental means. The drawing of the teeth, as alleged, was the cause or means of plaintiff's husband's death, but there was nothing accidental about the means. The last expression of our Supreme Court on a policy provision identical with that in the policy in this case is in Parker v. Provident Life & Accident Insurance Company, 178 La. 977, 152 So. 583, 584, in which the jurisprudence of the nation is discussed. We followed this decision in the case of Smith v. Metropolitan Life Insurance Company, 155 So. 789.

In the Parker Case, the court said:

"It is the accepted rule that insurance contracts are construed against the insurer, and a liberal interpretation exempting or limiting the insurer's liability is not permitted. The rule is applicable where there is ambiguity in the contract, or where doubt of the essential facts to be established results from the state of the proof. Whether an injury results from violent and accidental means or from means employed in the usual and accepted manner are distinct propositions. The plaintiff was insured against the effects of the former, but not against the effects of the latter.

"In the case of Riley v. Interstate Business Men's Accident Association (Iowa) 152 N.W. 617, the court said:

" 'There is a difference between an accidental result and an accidental cause. * * * It is apparent that to entitle one to recover, under a policy like the one in question, it is not sufficient to show that the death was accidental. Death is the result of some precedent act or condition. It is traceable to some cause. It is not sufficient, to make the cause accidental, that it appear that the resulting death was unanticipated, unforeseen, and not expected as a result of the act done. It must appear that that which happened to produce the result happened through accident, in order that the proper foundation may be laid for the recovery. The policy provides recovery in the event of death, but only where death results from bodily injuries effected solely by external, violent, and accidental means.'

"In Schmid v. Indiana T. Acc. Ass'n, 42 Ind.App. 483, 85 N.E. 1032, and Elsey v. Fidelity & Gas Co. (Ind.App.) 109 N.E. 413, the rule in Indiana is stated as follows:

" 'If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means,' and 'that, where an injury occurs as the direct result of intentional acts, it is not produced by accidental means.'

"The Indiana rule was followed by the federal courts in Lewis v. Iowa State Traveling Men's Ass'n (D.C.) 248 F. 602, affirmed in (C.C.A.) 257 F. 552.

"In Horton v. Travelers Ins. Co., 45 Cal. App. 462, 187 P. 1070, the California Appellate Court held that: it is not enough to constitute 'accidental means' that the injury is unexpected or unforeseen, but there must be something of an unexpected or unforeseen character in the means which produced the injury.

"The cases cited are in accord with the text-writers, Couch, Cooley and Joyce. See Couch on Insurance, p. 3958; Cooley's Brief on Insurance (2d Ed.), vol. VI, p. 5235; Joyce, on the Law of Insurance, vol. 5, p. 2863 et seq. Mr. Cooley says:

" 'A person may do certain acts, the result of which may produce unforeseen consequences, and may produce what is commonly called accidental injury; but when the means are exactly what he intended to use and used, the means are not accidental within the meaning of the policy.'

"In support of his views Mr. Cooley cites, in addition to the authorities we have cited, the following cases: Lehman v. Great Western Accident Ass'n, 155 Iowa 737, 133 N.W. 752, 42 L.R.A.(N.S.) 562; Maryland Casualty Co. v. Spitz, 246 F. 817, 159 C.C.A. 119, L.R.A.1918C, 1191; Tuttle v. Pacific Mut. Life Ins. Co., 58 Mont. 121, 190 P. 993, 16 A.L.R. 601; U. S. Fidelity & Guar. Co. v. Blum (C.C.A.) 270 F. 946.

"In the last-cited case the court said:

" 'There is a distinction between accidental death which may be an unexpected or unintentional result of a voluntary act, and death from accidental means which

must result from some unforeseen or. unintended act.'

"To the same effect is Barnstead v. Commercial Travelers' Mut. Acc. Ass'n, 204 App.Div. 473, 198 N.Y.S. 416; Kendall v. Travelers' Protective Ass'n, 87 Or. 179, 169 P. 751; Young v. Continental Cas. Co., 128 S.C. 168, 122 S.E. 577; American Acc. Co. v. Reigart, 94 Ky. 547, 23 S.W. 191, 21 L.R.A. 651, 42 Am.St.Rep. 374; Feder v. Iowa State Trav. Men's Ass'n, 107 Iowa 538, 78 N.W. 252, 43 L.R.A. 693, 70 Am. St.Rep. 212; Preferred Accident Ins. Co. v. Patterson, 213 F. 595, 130 C.C.A. 175; Rock v. Travelers' Ins. Co., 172 Cal. 462, 156 P. 1029, L:R.A.1916E, 1196; 7 A.L.R., p. 1136.

"In the case of Rock v. Travelers' Ins. Co., the court said:

" 'A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus in Clidero v. Scottish Accident Ins. Co., 29 Scot.L.R. 303, Lord Adam said:

" ' "The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental." '

"We have made a diligent search and have found that the great weight of authority is in line with the authorities cited supra and with the excerpts we have quoted therefrom. * * *

"The overwhelming weight of authority is to the effect that, if the means which produces an injury is intentionally, voluntarily used in the usual and expected way, the resulting injury, though unexpected, unusual, or unanticipated, is not produced by 'accidental means.' But if in the act which precedes the injury there intervenes something unforeseen or unexpected, or if something unusual occurs which produces the injury, then it may be said that the injury resulted through 'accidental means.' * * *

"What we are asked to hold is that if an unforeseen, unexpected, unanticipated injury results from the doing of an act voluntarily and as expected, the doing of the act being the means by or through which the injury was caused, then the injury was caused by 'accidental means.'

"We cannot so hold. On the contrary we hold that unless there is an accidental element in the act which precedes and causes the injury, there can be no recovery under a policy which insures only against injuries caused by 'accidental means.' From this it does not follow that there can be no recovery in any case where the means by which an injury results is voluntarily commenced or begun. It frequently happens that unexpected, accidental elements intervene between the beginning of a voluntary act and the injury. In such cases, if the injury is traceable to the intervening, unexpected happening, and not to the doing of the act as intended, there may be recovery. To illustrate: The plaintiff in the present case voluntarily pulled on the lever of the jackscrew; he did precisely what he intended to do in the way he intended to do it; injury resulted. He cannot recover because the injury resulted from the doing of the act just as it was intended. The pulling on the handle of the jackscrew was the means by which the injury was caused. But there was nothing accidental about the means. He pulled just as he expected to. But if while pulling on the lever his foot had unexpectedly slipped, and due to the slip there had been an unforeseen, unanticipated increase in the strain on his body and the injury had resulted from the increased strain, he could have recovered, even though he was voluntarily pulling on the lever."

Under the above authority plaintiff has failed to state a cause of action, and the judgment of the lower court sustain-

ing the exception of no cause of action is correct and is affirmed. Plaintiff may have a right of action and has failed to allege it. Therefore, that part of the judgment sustaining the exception of no right of action is reversed. Cost of appeal to be paid by appellant.