ORRILL v. PRUDENTIAL LIFE INS. CO. OF AMERICA.

No. 22048.

District Court, N. D. California, S. D.

May 5, 1942.

Don Carlos Barrett, of San Francisco, Cal., for plaintiff.

Knight, Boland & Riordan and Burton L. Walsh, all of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff, the widow of a retired army officer, sues defendant to recover $10,000 on the accidental death benefit provision of a policy of life insurance in which her husband, Captain Orrill, was the insured and she was the beneficiary. The face of the policy provided for the payment, upon proof of death of insured, of $10,000, which has been paid. The question for decision is whether Captain Orrill's death was caused solely by accidental means entitling plaintiff to the payment of an additional $10,000.

The policy was issued on September 10, 1926, to the insured, at the age of 49, when he was a Captain of Infantry in the United States Army. In October, 1934, Captain Orrill applied to the War Department for retirement because of physical incapacity. The report of physical examination made by two physicians of the Medical Corps of the United States Army shows that the Captain was then 58 years of age, height 69 inches, weight 169 pounds. That he was suffering from hardening of the arteries with severe cerebral involvement; serious heart disease and chronic arthritis; dental condition, pyorrhea with slight alveolar resorption.

The report closes with the statement: "We are further of the opinion that the cause of the incapacity is an impaired cardio-vascular system, particularly the cerebral arteries, from degenerative changes; that the cause is an incident of service and that the incapacity originated in October, 1933."

The Army Retirement Board found that Captain Orrill was incapacitated from active service; "that the cause of the incapacity is arteriosclerosis, generalized, moderately severe, with cerebral involvement, accompanied by moderate arterial hypotension; that the incapacity is permanent."

On April 20, 1935, Captain Orrill applied to defendant for total and permanent disability benefits under the terms of the policy. Under his own hand applicant described his condition as follows: "I cannot

do any physical work on account of my heart and blood vessels as any slight exertion causes me extreme dizziness. I am unable to do any mental work as I become weak and dizzy and rattled as soon as I try to do anything that requires mental effort. I have a constant pain in my neck and head and my heart feels like a heavy weight. These conditions have been progressively worse during the last three years." Disability benefits were granted and paid to the insured until his death on May 5, 1940, a period of 62 months.

On February 29, 1940, Captain Orrill complained to his wife of an aching jaw. He called upon Dr. John H. Clayton, a dentist, and had a lower tooth extracted. "The condition of the mouth appeared to be all right," testified the doctor at the Coroner's inquest, "and the tooth I extracted was a lower tooth and it was very pyorrhetic". "It was very loose and practically came out by itself. That was February 29th. I told him to come in the next day to see the socket and I didn't see him again."

"Q. But the tooth was obviously infected or it would not have been loose? A. He told me he had bumped it, and it was loose and very pyorrhetic."

On March 9th Captain Orrill entered Letterman Hospital, San Francisco, for treatment of osteomyelitis of the lower jaw following tooth extraction. Dr. Louis K. Mantell, of the United States Army, testified:

"I was one of three doctors on this case. He was admitted to Letterman on March 9th for an osteomyelitis—an infection of the bone of the right side of the jaw. On March 11th he was operated on and this infection drained, and in spite of the surgery and all the available treatment, the patient continued to get worse and developed an infection of the—the pus from his infected bone got into his blood stream and that was the direct cause of his death. He died of a condition known as pyemia or pus infection in the blood stream. A contributing cause of death was heart disease of a serious nature, what is known as myocardial infarction or a blockage of the blood supply to the heart. That was one of the contributing causes of death. He died May 5th." "I cannot say what caused this osteomyelitis. All we can say is that it apparently developed following the extraction of some lower teeth." "I don't know how many were extracted before he came in.

We took out all the remaining teeth on March 14, all the remaining lower jaw teeth. It was hard to say whether the osteomyelitis was not already present at the time he appeared at the dentist's office to get his teeth extracted, and it probably was." "Q. Probably if he had not had the infection he probably would not have required the extraction in the first place? A. Yes."

The Coroner's certificate of death shows that "death was due to natural causes: osteomyelitis of lower jaw following teeth extraction, multiple old and recent infarction of myocardium due to arteriosclerotic coronary occlusion."

The general autopsy findings showed "the body of a well developed, poorly nourished, white male, 5 feet, 7 inches long, weighing 103 pounds, and anatomically about 63 years old."

Dr. Raymond O. Hart, Lieutenant-Colonel in the United States Army, performed the autopsy. The Doctor did not know Captain Orrill in life. The post mortem showed "scars in the myocardium, which are indicative of coronary occlusions." "He had abscesses in the brain, in the lungs, in both kidneys, in the spleen, and in the heart." "They were abscesses as a result of the septicemia, which is a blood stream infection."

The cause of death was "osteomyelitis of the jaw, following tooth extraction, and the immediate cause of death was pyemia due to streptococcus septicemia."

"From my examination alone I cannot say positively whether there was an existing osteomyelitis when the tooth was pulled, or whether the actual pulling of the tooth broke loose an abscessed cavity present and released the infection into the jaw, or whether the abscessed cavity developed an osteomyelitis after the pulling of the tooth. My examination alone will not answer any of those questions; that is one that goes directly back to the original man who treated and pulled the tooth." "Osteomyelitis might follow the extraction of a tooth."

"Q. There would be nothing unusual about that? A. No.

"Q. In fact, you might even get a tooth bumped with something and that might cause osteomyelitis to set in, might it not? A. It could." * * *

"Q. Am I correct in inferring from your testimony that it is a matter of con-

904

jecture on your part as to just what particular thing and at what particular time this osteomyelitis was started or caused? A. Except from the history of having a tooth pulled, and knowing that it is a possibility.

"Q. That is simply a possibility? A. A likely possibility.

"Q. In other words, the extraction of that tooth on February 29th was the most likely of all the possibilities? A. Most likely of all the possibilities."

Plaintiff's claim is based upon the "accidental death benefit" feature of the contract which provides that before recovery can be had death shall occur "directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means". The policy further provides "that no accidental death benefit shall be payable if the death of the insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

 The burden of proof is upon the plaintiff. New England Mut. Life Ins. Co. v. Flemming, 9 Cir., 102 F.2d 143; Rock v. Travelers' Insurance Co., 172 Cal. 462, 464, 156 P. 1029, L.R.A.1916E, 1196; Reese v. Smith, 9 Cal.2d 324, 70 P.2d 933. There is a total lack of proof of death as a result of accident or accidental means. There was nothing unusual or unexpected about the insured's visit to the dentist and the extraction of a tooth. There was no accident nor any violent injury as a result of removing the tooth. Brunson v. Mutual Life Ins. Co. of New York, La.App., 180 So. 211. It might readily be inferred from the evidence that death was caused by bodily infirmity and disease. In 1935 the insured was retired from the Army as totally and permanently disabled, suffering from a serious heart ailment and other diseases. The post mortem showed a serious diseased physical condition. It is true that death shortly followed extraction from osteomyelitis of the jaw, but it is probable that death was due to natural causes as found by the Coroner's jury.

There can be no recovery here resulting from the concurring effect of any injury and pre-existing disease. "If the disease aggravated the effect of the accident, and but for the existence of the disease the accident would not have been fatal, or if the accident aggravated the disease, the exception will relieve the insurer from liability." Cooley's Briefs on Insurance, 2d Ed., vol. 6, p. 5352; Kellner v. Travelers' Ins. Co., 180 Cal. 326, 181 P. 61.

A judgment cannot be based upon guess, conjecture or speculation. Reese v. Smith, supra; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 344, 53 S.Ct. 391, 77 L.Ed. 819. Under the issues raised, proof of material facts is left to presumption. Inference cannot be built upon inference to establish a fact necessary to be proven. United States v. Ross, 92 U.S. 281, 285, 23 L.Ed. 707; Manning v. Insurance Co., 100 U.S. 693, 699, 25 L.Ed. 761; Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S.W. 947. The mere choice of possibilities or probabilities does not constitute evidence. Alexander v. Standard Acc. Ins. Co., 10 Cir., 122 F.2d 995, 997.

A further point is that the contract provides that death must occur "within 60 days of the accident." Assuming that an accident happened, the date would be February 29th, when the tooth was pulled, and death occurred on May 5th, making a period of 66 days. This alone would bar recovery.

From the facts and the law I conclude that the plaintiff has wholly failed to sustain the burden of proof and is not entitled to recover. Defendant will have judgment for its costs.