[Civ. No. 4120.  Second Appellate District, Division Two.—April 6, 1926.]

## GRAINGER HYER, Respondent, v. INTER–INSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Appellant.

[1] AUTOMOBILE INSURANCE—LIABILITY OF INSURER—NEGLIGENCE.—An automobile liability insurance policy indemnifies the assured against such sums as he shall become legally liable to pay to any other person as compensation for injury to or destruction of the property of such other person, and it is only from a liability which grows out of the negligence on the part of the assured, his agents or servants, that policies of this character are issued.

[2] ID.—NEGLIGENCE—PROXIMATE CAUSE.—Though a negligent act or omission be removed from the injury by intermediate causes or effects, it is in law the proximate cause of such injury if, in a natural and continuous sequence, unbroken by any new efficient cause, it produces the injury, and if, without it, the injury would not have happened.

[3] ID.—TERMS OF POLICY—CONSTRUCTION.—The terms used in an insurance policy should be given their plain, ordinary, and popular meaning.

[4] ID.—USE OF WORD "ACCIDENT"—DEFINITION.—As commonly used in liability insurance policies, the word "accident" is predicated of an occurrence which is the cause of the injury; that is to say, the word is employed to denote the cause rather than the effect.

[5] ID.—COLLISION OF AUTOMOBILES—RESULTANT INJURY—CAUSE.—In automobile accidents, particularly such as involve collisions, the injury and its cause may be practically inseparable; they may be, and often are, inseparable in time and space, but in such instances the accident is clearly and necessarily the cause from which the resultant injury flows as an incident.

[6] ID.—UNEXPECTED RESULT—ACCIDENTAL CAUSE—CONSTRUCTION.—A result, though unexpected, is not an accident within the meaning of the word "accident," as used in a liability insurance policy, but the means or cause must be accidental.

[7] ID.—SEVERAL INJURIES RESULTING FROM ONE ACCIDENT—PROXIMATE CAUSE.—Where one negligent act or omission is the sole proximate cause, or *causa causans*, there is, as a general rule, but

---

2.  See 19 **Cal. Jur.** 567; 22 **R. C. L.** 134.
3.  See 14 **Cal. Jur.** 440; 14 **R. C. L.** 925.
4.  See 14 **Cal. Jur.** 552.
7.  See 19 **Cal Jur.** 567.

one accident, even though there be several resultant injuries or losses.

[8] ID. — USE OF TERMS "ONE ACCIDENT" OR "AN ACCIDENT" — CON STRUCTION.—Where the terms "one accident" or "an accident" are used in automobile indemnity insurance contracts they are ordinarily and popularly understood to include a case where two or more persons are injured in person or in property as the result of an undesigned and unforeseen occurrence of an afflictive or unfortunate character.

[9] ID.—INJURIES TO TWO OR MORE AUTOMOBILES RESULTING FROM ONE ACCIDENT—LIABILITY OF INSURER—CONSTRUCTION OF POLICY.— Where an automobile indemnity insurance policy provides that the policy "covers all the Assured's legal liability to other persons for the injury to or destruction of the property of such persons . . . resulting solely and directly from the ownership, maintenance and/or use of the automobile" of the assured, but that in no case shall the insurer be liable for more than one thousand dollars "with respect to claims . . . arising from one accident," the use of the word "claims," in the plural, in connection with the words "one accident" clearly indicates that the parties understood that there might be several claims arising from one accident— as, for instance, where the vehicles of two or more persons are injured—but that though there might be several injuries and therefore several claims, the total liability of the insurer should not exceed one thousand dollars if the claims all arose from one accident.

(1) 36 C. J., p. 1084, n. 74, p. 1085, n. 76, 77. (2) 29 Cyc., p. 489, n. 32, 33, 34, p. 499, n. 92, p. 500, n. 5. (3) 32 C. J., p. 1151, n. 73. (4) 1 C. J., p. 395, n. 45, 46. (5) 36 C. J., p. 1085, n. 80 New. (6) 1 C. J., p. 390, n. 17. (7) 1 C. J., p. 395, n. 45. (8) 36 C. J., p. 1085, n. 80 New. (9) 36 C. J., p. 1085, n. 80 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

David R. Faries, John R. Berryman, Jr., and J. Allen Davis for Appellant.

No appearance for Respondent.

FINLAYSON, P. J.—This is an action to recover upon a liability insurance policy. Plaintiff is the assignee of the assured. A general demurrer to the complaint was over-

ruled. Defendant elected to stand upon its demurrer and declined to answer, whereupon a judgment was entered in favor of plaintiff for $500 and costs. Defendant claims that the complaint does not state a cause of action and that its demurrer was improperly overruled. The sufficiency of the complaint turns upon the construction to be placed upon the word "accident," as employed in a clause of the policy which limits defendant's liability to $1,000 for claims arising from "one accident."

The facts alleged in the complaint are substantially these: On July 29, 1920, defendant executed and issued to the assured a policy which insured him for the term of one year against liability to other persons for injury to or destruction of their property resulting from the use of the assured's automobile, a Marmon touring car. Defendant is referred to in the policy as the "Exchange." The provisions of the instrument which are germane to the present inquiry read: "In consideration of an additional deposit of $13.95 this policy also covers Assured's legal liability to other persons for injury to or destruction of the property of such persons . . . resulting solely and directly from the ownership, maintenance and/or use of the automobile herein described . . . , subject, however, to the following limitations and exclusions: (1) the Exchange's liability for such injury or destruction is limited to the actual value of the property destroyed at the time of its destruction, . . . but in no case shall the Exchange be liable with respect to claims (including claims for loss of use) arising from *one accident* for more than one thousand dollars." (Italics ours.) On March 27, 1921, the policy then being in full force and effect, the assured, by and through his chauffeur, was driving his Marmon car in a southerly direction upon a state highway in California. At the same time two other automobiles—one an Overland owned by a man of the name of Chance, and the other a Cadillac owned by the Keck Company, a corporation—were being driven in a northerly direction on the same highway; the Cadillac was traveling about 100 feet to the rear of the Overland; the Marmon car was so negligently operated by the assured's chauffeur that it collided with the Overland, damaging the latter vehicle in the sum of $500; the force of that collision broke the steering-gear of the Marmon, causing it to become un-

manageable, so that its path of travel could not be controlled, by reason whereof its course was so deflected toward the east side of the highway that it collided with the Cadillac, damaging it in the sum of $1,500 and causing the assured to incur a liability to pay that amount of money to the owner of that car; defendant already has paid $1,000 to the owner of the Cadillac; that sum is the total amount which has been paid by it on account of these collisions; the owner of the Overland has recovered a judgment against the assured in the sum of $500, which remains unpaid; defendant refuses to pay that judgment or any part of it, and disclaims all further liability under its policy of insurance. The action was brought to recover the amount for which the assured so became liable to the owner of the Overland.

Appellant claims that though there were two "injuries"—one to the Overland and the other to the Cadillac—there was but one "accident," within the meaning of the policy, and that therefore it complied with its obligations under its contract of insurance when it paid the sum of $1,000 to the owner of the Cadillac.

[1] It is only from a liability which grows out of negligence on the part of the assured, his agents or servants, that policies of this character are issued. (*Tinline* v. *White Cross Ins. Assn.* [1921], 3 K. B. 327, and notes to that case in 11 B. R. C., p. 265 et seq.) The policy indemnified the assured against sums which he shall become legally liable to pay to any other person as compensation for injury to or destruction of the property of such other person. A man does not become liable to pay compensation for accidental injury to the property of another unless the accident is due to his wrongful act. As was said in *Ford* v. *Stevens Motor Car Co.*, 203 Mo. App. 669 [220 S. W. 980], "Such so-called liability policies on automobiles, in general, protect the owner, or his agent or servant operating the same, from liability for his own negligence, and unless he, or his said agent or servant, is found to be negligent, there is no liability. This is the very purpose of such policies."

Here the assured's liability to the owner of each of the two automobiles damaged in the collisions accrued from one act of negligence on the part of the assured's servant, namely, the negligent operation of the Marmon car which caused it to collide first with the Overland and then with the

Cadillac. This act of negligence, the one cause which set in motion all that followed, was the proximate cause of both collisions. That is to say, the chauffeur's negligence which caused the injury to the Overland was also the cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury to the Cadillac. Without the initial act of negligence the injury to the Cadillac would not have occurred. "Proximate cause" literally means the cause nearest to the effect produced; but in legal terminology it is not confined to its literal meaning. [2] Though a negligent act or omission be removed from the injury by intermediate causes or effects, yet if, in a natural and continuous sequence, unbroken by any new efficient cause, it produces that injury, and if without it the injury would not have happened, it is in law the proximate cause of such injury, or the *causa causans* of the schoolmen. Proximity in point of time or space is no part of the definition. That is of no importance except as it may afford evidence for or against proximity of causation. (*Dickson* v. *Omaha etc. Ry. Co.*, 124 Mo. 140 [46 Am. St. Rep. 429, 25 L. R. A. 320, 27 S. W. 476], quoting 1 Shearman and Redfield on Negligence, 4th ed., sec. 26.)

Though there was in this case but one proximate cause of the unexpected and untoward occurrence in which the double injury happened, it does not for that reason alone necessarily follow that the injuries resulted from but "one accident," as that term is used in the policy. For obviously there is a clear distinction between the chauffeur's want of due care considered as the cause of the accident, and the accident considered as the cause of the resulting injuries. Whether there were two accidents or only one accident presents a question the solution whereof depends upon the meaning to be given to the word "accident," as used in this contract of insurance.

[3] The terms used in an insurance policy should be given their plain, ordinary, and popular meaning. We should, however, be careful on the one hand not to be over-liberal in our interpretation of the word "accident," and on the other hand not to be too technical. But whether we give to the word, as used in this policy, a strict interpre-

tation or assign to it a liberal and popular meaning, we think it must be held that there was but one accident.

The word "accident" probably has been discussed in adjudications as often as any other word in the English language. It is not a technical term, with a clearly defined meaning, and it has been used in more than one sense. In its most commonly accepted meaning it signifies an event which takes place without one's foresight or expectation. It was defined by Lord Macnaghten in *Fenton* v. *Thorley etc., Ltd.* [1903], App. Cas. 443, as an "unlooked for mishap or an untoward event which is not expected or designed." Its meaning is well stated in Corpus Juris (vol. 1, pp. 394, 395), where it is said: "Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt apart form its cause, and if the cause is not known the loss or hurt itself would certainly be called an accident. The word is also often used to denote both the cause and the effect, no attempt being made to discriminate between them." This definition, originally given by Lord Robertson in *Fenton* v. *Thorley, supra,* is now generally accepted by the authorities. See *Standard Oil Co.* v. *United States,* 264 Fed. 69 [12 A. L. R. 1407].

It will be noticed that in Lord Robertson's definition an accident is an "occurrence." It is an "occurrence which produces hurt or injury." It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i. e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. The use of the word to denote the unexpected and unintended result—the loss or hurt—rather than the cause is quite common in cases arising under Workmen's Compensation Acts, as, for instance, where a workman performing his usual task in his wonted way suffers, by reason of strain, an internal injury that is itself sudden, unusual, and unexpected. (*Brown's Case,* 123 Me. 424 [123 Atl. 421]; *Fidelity etc. Co.* v. *Industrial Acc. Com.,* 177 Cal. 614 [L. R. A. 1918F, 856, 171 Pac.

429]. See, also, *Carroll* v. *Industrial Com.,* 69 Colo. 473
[19 A. L. R. 107, 195 Pac. 1097].) In 25 Harvard Law
Review, 340, it is said: "Since the case of *Fenton* v. *Thor-
ley,* nothing more is required [in cases arising under Work-
men's Compensation Acts] than that the harm that the
plaintiff has sustained shall be unexpected." This latitudi-
narian use of the word in that class of cases is justifiable for
the reason that the phrase "injuries sustained by accident,"
as used in Workmen's Compensation Acts [Stats. 1913,
p. 279], is to be given a broad interpretation in harmony
with the evident purpose of such enactments and with the
spirit of liberality in which they were conceived. (*Fidelity
etc. Co.* v. *Industrial Acc. Com., supra.*) [4] But as com-
monly used in liability insurance policies, the word "ac-
cident" is predicated of an occurrence which is the *cause*
of the injury. That is to say, as used in liability insurance
contracts the word is employed to denote the cause, rather
than the effect.

[5] In automobile accidents, particularly in such as in-
volve collisions, the injury and its cause may be practically
inseparable. They may be, and often are, inseparable in
time and space. And yet in such instances the accident is
clearly and necessarily the cause from which the resultant
injury flows as an accident. In *Lewis* v. *Commercial
Casualty Ins. Co.,* 142 Md. 472 [28 A. L. R. 1287 [121 Atl.
259], the court, having under consideration a liability in-
surance policy insuring an automobile owner, employed
this language: "The meaning of the word 'loss,' as used
in the clause under construction, is the injury or damage
*caused* by the accident." (Italics ours.) [6] In *Tuttle*
v. *Pacific Mutual L. Ins. Co.,* 58 Mont. 121 [16 A. L. R.
601, 190 Pac. 993], the court, having under consideration the
meaning of the word "accident" as used in an accident
insurance policy, says: "A result, though unexpected, is not
an accident; the means or cause must be accidental." This
language applies with equal force to such accidents as fall
within the purview of liability insurance policies such as the
one before us. Liability insurance is but a branch of acci-
dent and casualty insurance. (*Employers' Liability Assur.
Corp.* v. *Merrill,* 155 Mass. 404 [29 N. E. 529] ; *Metropolitan
Casualty Ins. Co.* v. *Basford,* 31 S. D. 149 [139 N. W. 795].)

[7] Where, as here, one negligent act or omission is the sole proximate cause, or *causa causans,* there is, as a general rule, but one accident, even though there be several resultant injuries or losses. Let us suppose that in the instant case the owner of the Overland car had likewise been the owner of the Cadillac, and that the former vehicle had been towing the latter when the successive but causally·connected collisions occurred—just as each car in a freight train pulls the car which is immediately behind it. Could it correctly be said in the case just supposed that there were two accidents, merely because two automobiles were damaged in sudden and unexpected crashes happening in continuous sequence as a connected chain of events, but springing from a single initial cause? Clearly not. It would no more be correct to say of such a case that there were two accidents than it would be to predicate two or more accidents of a general freight train wreck, merely because two or more cars in the train might have been demolished in the same catastrophe. If, in our supposititious case, there would be but one accident, though two automobiles belonging to the same person were injured, then how could that accident become two accidents merely because, under the facts of this case, the two injured vehicles were separately operated and owned? To ask the question is to answer it.

In *Allen* v. *London Guarantee etc. Co.,* 28 Terr. L. Rep. 254, the policy limited the liability of the insurance company to £300 for all claims arising out of "any accident or *occurrence.*" Two persons were injured in an accident caused by a cart belonging to the assured. It was held that there was only one "occurrence" within the meaning of the policy, and that therefore the limitation of defendant's liability to £300 applied. It is true that in that case the learned justice who rendered the decision was constrained to the view that there were two "accidents," though only one "occurrence." He appears to have been guided to this seeming incongruity by the interpretation which he put upon the decision of the court of appeal in *South Staffordshire Tramways Co., Ltd.,* v. *Sickness & Accident Assur. Assn., Ltd.* [1891], 1 Q. B. 402—a case presently to be adverted to by us. For our present purpose, however, it

suffices that the Allen case holds that there was but one "occurrence," even though two persons were injured.

If it be proper to say that there is but one "occurrence" where two persons are injured in an automobile collision, then it is a mistake to say of such a case that there are two "accidents"; for in a general sense every automobile accident is an occurrence. In *Chapin* v. *Ocean Accident & Guarantee Corp.,* 96 Neb. 213 [52 L. R. A. (N. S.) 227, 147 N. W. 465], the court, speaking of an automobile indemnity insurance policy, says: "As used in an indemnity policy such as this, we are of opinion that the word 'accident' means an undesigned and unforeseen *occurrence* of an afflictive or unfortunate character, resulting in bodily injury to a person other than the insured." (Italics ours.) If, as the Nebraska court says, the word "accident," as used in an automobile indemnity policy, means an undesigned and unforeseen "occurrence" resulting in loss or injury to a third person, it follows that if the facts shown in *Allen* v. *London Guarantee etc. Co., supra,* presented the case of one "occurrence," as was held by the English court, then they also presented the case of but one "accident."

That part of the continuous sequence of events which embraces the second collision in this case—the collision of the Marmon car with the Cadillac—may well be described in the language of Bailhache, J., in *Tinline* v. *White Cross Ins. Assn., supra,* as "the incident of the accident." In that case the White Cross Insurance Association insured the plaintiff against legal liability to pay to third persons compensation for "accidental personal injury" caused through the driving of plaintiff's motor-car. While driving the car at an excessive rate of speed the assured knocked down three persons, injuring two of them and killing the third. The defendants contended that a recovery under the insurance contract would violate public policy, for the reason that the assured was guilty of a crime, he having pleaded guilty to manslaughter for the killing of one of the persons knocked down by his car. In ruling against this contention Judge Bailhache, before whom the action was tried, said: "The fact that one of the three persons was killed is, as I have said, really immaterial for the purposes of this case; it was the *incident* of the accident, or the accident of the

accident.'' (Italics ours.) So here, the collision with the Cadillac, a part of the general catastrophe in which the three automobiles were involved, was but an ''incident'' of the accident, and not a separate accident.

Thus far in our consideration of the words ''one accident,'' as used in this policy, we have purposely approached the question from the standpoint of a somewhat philosophical interpretation of the word ''accident.'' We shall now endeavor to ascertain the ordinary and popular meaning of the word, premising by saying that we are convinced that the ultimate result, so far as this case is concerned, will be found to be the same whether the word ''accident'' be taken in a philosophical sense or be given its ordinary and popular meaning—one which it may be assumed any intelligent business man would give it. Fortunately the books afford several instances of the business man's construction of the word. In *Klein* v. *Liability Assur. Corp.*, 9 Ohio App. 241, the court had before it an automobile indemnity insurance policy which contained a clause to the effect that the insurer's liability ''on account of any one accident,'' resulting in injuries ''to *more* than one person,'' is limited to a named sum of money. A similar provision is found in the policy which was before the court in *McClung* v. *Pennsylvania Taximeter Cab Co.*, 25 Pa. Dist. Rep. 583. In *Capelle* v. *United States Fidelity & Guaranty Co.*, 80 N. H. 481 [120 Atl. 556], the policy indemnified the assured from liability resulting from claims upon him for damages on account of bodily injuries or death resulting at any one time and suffered by any person or ''persons'' as the result of ''an accident.'' These contracts—and doubtless many other similar instances could be cited—illustrate the fact that in the realm of business, in contracts presumably entered into between ordinary men of affairs, employing language in a sense which is commonly understood by such men, the term ''one accident,'' or ''an accident,'' is used to cover cases where two or more persons may suffer loss or injury. In *Tinline* v. *White Cross Ins. Assn.*, *supra*—the case where the assured knocked down three persons while driving his automobile, killing one of them—Judge Bailhache commences his opinion thus: ''In this case plaintiff claims a declaration that he is entitled to be indemnified against the consequences of *an accident.*''

(Italics ours.)   [8]   These few illustrations will suffice to show that when the term "one accident" or "an accident" is used in automobile indemnity insurance contracts it is ordinarily and popularly understood to include a case where two or more persons are injured in person or in property as the result of an undesigned and unforeseen occurrence of an afflictive or unfortunate character, such as happened in this case.

There would have been no occasion for an opinion of this length were it not for the decision of the English court in the *South Staffordshire Tramways* case [1891], 1 Q. B. 402, referred to *supra*. Without some thoughtful consideration, that case might seem to be at variance with our conclusion. However, a careful analysis of the policy there under consideration will show that case to be *sui generis*, and that the conflict between it and the views which we entertain is more apparent than real or substantial. There the assured made a written application which was recited in the policy. When the insurance clauses in the policy and the written application were read together it was apparent that the words "any one accident," in the policy, were intended by the parties to mean an accident to each of several persons who might be injured by the vehicles of the assured upon any one occasion. The policy, after reciting that the plaintiffs had applied to defendants "for an indemnity against all such claims as hereinafter mentioned for compensation for personal injuries, and damage to property, caused by vehicles in their possession," witnessed that the defendants did thereby agree that "so far as regards claims for personal injury and damage to property made against the assured in respect of *accidents* caused by vehicles . . . belonging to the assured . . . and for which *accidents* the assured shall be liable, the association shall pay the assured the sum of £250 in respect of any one accident." It will be noticed that the application was for indemnity against all claims for personal "injuries," and damage to property, caused by plaintiffs' vehicles. As was pointed out by Bowen, L. J., in his concurring opinion, when the policy is looked to it appears that it limits the words of the application by adding the words "in respect of accidents." This word "accidents," in the plural, occurs twice in the policy preceding the phrase "any one accident," and was

evidently intended to refer to "accidents" occurring at any one time, and not to independent and wholly disconnected accidents such as might possibly occur at different times during the life of the policy. It is evident, therefore, that by the use of the word "accidents," in the insurance clause which provides for indemnity against "claims for personal injury . . . made against the assured in respect of *accidents* caused by vehicles," the parties intended to treat as several accidents all such untoward occurrences as might happen to several persons upon any one occasion, i. e., to regard as one accident whatever happened to each of the persons injured. It follows as a corollary to this construction that the words "any one accident," subsequently appearing in the policy, were intended to mean any one unexpected and untoward event happening to each of several persons who might be injured by plaintiffs' vehicles at any one time. That is to say, if in the preceding part of the policy the word "accidents" was intended to embrace each separate untoward occurrence happening to each of the several persons who might be injured upon any one occasion, then, as was said by Lord Bowen, the word "accident," in the phrase "any one accident," must receive the same construction.

[9] The policy under consideration in the instant case differs radically from that which was before the court of appeal in the South Staffordshire Tramways case. In the insurance contract here in question it is declared that the policy "covers all the Assured's legal liability to other persons for the injury to or destruction of the property of such persons . . . resulting solely and directly from the ownership, maintenance and/or use of the automobile" of the assured, but that in no case shall the insurer be liable for more than $1,000 "with respect to *claims* . . . arising from one accident." The use of the word "claims," in the plural, in connection with the words "one accident" clearly indicates that the parties understood that there might be several claims arising from one accident—as, for instance, where, as here, the vehicles of two or more persons are injured—but that though there might be several injuries and therefore several claims, the total liability of the insurer should not exceed $1,000 if the claims all arose from one accident.

Concluding, as we do, that there was but one accident, and that, therefore, by its payment of $1,000 to the owner of the Cadillac appellant has fully discharged the liability which devolved upon it by reason of the accident, it follows that the demurrer to the complaint was improperly overruled.

The judgment is reversed, with direction to the lower court to sustain the demurrer.

WORKS, J., Concurring.—I concur in the judgment and in everything that is said in the foregoing opinion. I desire, especially, to announce my concurrence in the reasoning whereby the writer of the opinion distinguishes the case of *Staffordshire Tramways Co.* v. *Sickness & Accident Assn.*, 1 Q. B. 402, from the present one. If, however, that case is not distinguishable from this, I am of the opinion that it was wrongly decided. So much, to my mind, is evident from the general reasoning of the above opinion. I think the English case has been given a fictitious importance by the very general application of its doctrine which has been made by annotators, text-writers, and judges.

CRAIG, J., Dissenting.—I dissent, because to my mind the word "accident" in the indemnity policy in suit was intended by the parties to be given its ordinary meaning, and this the opinion of my associates holds it should not receive.

It must be conceded that it is a necessary presumption that the word in question was understood to denote its usual meaning unless some consideration of fact or law appears to the contrary. I find neither. The word "accident" as used in indemnity insurance appears to have a definite meaning. There can be no dispute upon the proposition that all authorities agree that an "accident" means an "unintended and unexpected occurrence which produces hurt or loss." It is impossible to read into this language any reference to the cause of the occurrence other than that suggested by the words "unintended and unexpected." These words merely describe the quality of the event as unforeseen and undesigned. It cannot be doubted that if this generally accepted definition be taken as applicable here, the facts of this case show that separate accidents occurred to the Over-

land and Cadillac cars. But my associates hold that an unusual meaning was intended by the parties, and that the word "accident" had reference to the cause of the events rather than to the events themselves. Of course, if this indemnity policy contemplated that an "accident" referred to a cause, and not to an "event," but one accident occurred, for there was but one cause.

Two cases are cited in the majority opinion to sustain the statement that in automobile accidents the injury and the cause are often inseparable, and yet, in such instances the accident is the cause from which the resultant injury flows as an incident. I am compelled to acknowledge an entire inability to discover anything in the language contained in either of these cases to sustain this assertion. *Lewis* v. *Commercial Casualty Ins. Co.*, 142 Md. 472 [28 A. L. R. 1287, 121 Atl. 259], was an action upon an indemnity insurance policy, and in which the contest had been based entirely upon the question of whether or not sufficient notice of loss had been given, or if not given, the requirement thereof had been waived. I find no attempt in the opinion to define the word "accident." In *Tuttle* v. *Pacific Mutual Life Ins. Co.*, 58 Mont. 121 [16 A. L. R. 601, 190 Pac. 993], the court does use the language quoted: "A result, though unexpected, is not an accident; the means or cause must be accidental." But the sentence which immediately precedes explains why the language quoted was used and the limitation clearly intended to be placed upon the same. It is said: "The word 'accident,' *in accident policies*, means *an event* which takes place without one's foresight or expectation. A result, though unexpected, is not an accident, the means or cause must be accidental." (Italics mine.) Of course, it is true that in accident insurance the means must be accidental, for in such policies the form universally employed insures against injury sustained by the insured "caused solely by external, violent, and accidental means." Such was the language of the policy which the court had before it. It needs no argument to sustain the proposition that where the contract expressly provides that the *means* must be accidental it is not sufficient that the event only was an accidental one. However, the policy which is the basis of this suit makes no reference to the *means*. In it we find no provision that the *means* shall

be accidental. It stipulates to indemnify the assured against loss from legal liability paid to others for injury to or destruction of their property, resulting from an accident, that is, a certain kind of an event.

No decision has come to my attention in which the definition of an accident is announced which states that the cause of the event must be accidental, except those construing accident and life insurance policies, using the words "accidental means" in specifying and limiting the grounds of liability of the assured. This was true in the case of *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462 [L. R. A. 1916E, 1196, 156 Pac. 1029], and a long list of decisions therein enumerated.

Since it is conceded that in cases arising under the Workmen's Compensation Acts, to produce an accident nothing more is required than that the harm which the plaintiff has sustained shall be unexpected and unintended, such decisions need not be cited. But, under them the circumstances of the instant case would necessarily constitute two accidents. However, it is asserted that there are decisions construing accident and life insurance policies which hold otherwise.

If there be such a distinction (and I have found none) both reason and authority make the conclusion inevitable that the decisions which have arisen under the Workmen's Compensation Acts are to be classed with those under ordinary indemnity contracts, rather than accident and life insurance policies in so far as the matter under consideration is concerned. The former, like the second class mentioned, provide for the indemnifying of persons from loss or hurt which has resulted to others. In each of the classes last mentioned the loss which the insurer is obligated to make good is not only one which has befallen a third party, but is one which the insured is required by law or agreement to compensate. Under the former the obligation arises from the direct mandate of the statute; under the indemnity contract it comes about through the fact that the insured is responsible for a happening which makes him liable in damages to another. In both instances the law compels the payment by the insured of the loss sustained. This legal compulsion supplies the element of cause in all indemnity liability, and would supplant that element, if it

be conceded as ever included within the definition of an "accident."

If it were true that in certain cases the word "accident" denotes both the cause and its effect, while generally it means the loss or hurt without including in its content any reference to the cause thereof, there is reason for this distinction. This is well exemplified in the considerations which form the foundation for measuring the liability of the insurer in accident insurance policies and indemnity policies, respectively.

There is a clear distinction between an insurance against accidents which may happen to the insured and one indemnifying him against loss for injuries which he may wrongfully cause to others. The former, in so far as fixing liability is concerned, clearly involves an inquiry into the intention, and care exercised by the insured, and his part in producing the event from which the loss occurs. The insurer would not agree to pay the insured for a loss which was intentionally caused by the insured himself. It is understood that the insured in such cases must be free from blame and wrongdoing; but in an indemnity contract the opposite is true. There, the contract contemplates reimbursement of the assured by the insurer of loss sustained as a consequence of the latter being required to pay a third party for injuries inflicted upon said third party or his property. Of course, this necessarily involves a recognition of the fact that the assured was guilty of an act violative of the rights of another, so as to create a liability for damages to that other. In such a contract the insurer is not concerned with the cause, except as above indicated; and so, when a limit is placed upon his liability for any one accident, the cause is not taken into consideration, but only the event and the loss resulting therefrom to the assured. Hence, aside from the difference in language to which attention has been called, the definition of an "accident" contained in the ordinary accident insurance policy, and decisions construing it, are not necessarily applicable, but, rather, the more general meaning of the word "accident" is to be accepted, which, as stated in *Fenton* v. *Thorley etc., Ltd.* [1903], App. Cas. 443, is an unintended and unexpected occurrence which produces hurt or loss apart from

its cause. Under this definition it is clear that there were two accidents in the instant case.

Nor is the application of the ordinarily accepted meaning of the word "accident," arising under Workmen's Compensation Acts, due to any peculiar phraseology of such acts. It is true that in construing these statutes the courts have said that their language should be given a broad interpretation, but in so stating no exception is made, but rather the general rule is recognized. Substantially the same thing has been said by the courts of various states in construing indemnity insurance policies founded upon contracts having nothing to do with Workmen's Compensation Acts; that is, in interpreting such indemnity policies it has repeatedly been held that they are to be liberally construed with a view to providing fair protection to the insured, and that in all such instances words are to be given their ordinary and accepted meaning, which is all that the Workmen's Compensation Act decisions have done in defining the word "accident." (*Alabama Fidelity etc. Co.* v. *Alabama Penny Sav. Bank,* 198 Ala. 337 [76 South. 103]; *Murray* v. *Kaskaskia Live Stock Ins. Co.,* 204 Ill. App. 568.

But it would seem that all doubt upon this subject should be removed by the decision of the supreme court of Nebraska in *Chapin* v. *Ocean Accident & Guar. Corp., Ltd.,* 96 Neb. 213 [52 L. R. A. (N. S.) 227 [147 N. W. 465], which, like the instant case, involved an indemnity insurance contract, and in which, referring to an accident, it is said: "The word 'accident' is susceptible of and has received many definitions, varying with the connection in which it is used. It is: 'An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance, contingency; often an undesigned and unforeseen occurrence of an afflictive or unfortunate character; casualty; mishap; as, to die by an accident.' (Webster's New International Dictionary.) In the Century Dictionary, among the definitions given are: '2. Specifically, an undesirable or unfortunate happening; an undesigned harm or injury; a casualty or mishap.' As used in an indemnity policy such as this, we are of opinion that the word 'accident' means an undesigned and unforeseen occurrence of an afflictive or unfortunate character, resulting in bodily injury to a person other than the insured."

In an attempt to distinguish the case of *Staffordshire Tramways Co., Ltd.,* v. *Sickness & Accident Assur. Assn., Ltd.,* from the one before us, the foregoing opinion argues that the fact that the indemnity contract sued on used the word "accidents" rather than "accident" in a certain context caused the court to hold that there had been two accidents in that case. The provision quoted from the Tramways Company case is: "So far as regards claims for personal injury and damage to property ᵤ made against the assured in respect of accidents caused by vehicles . . . belonging to the assured . . . for which accidents the assured shall be liable, the association shall pay the assured the sum of £250 in respect of any one accident." The meaning of this statement seems to me to be clearly just this: That as distinguished from the subject matter of the rest of the policy, upon the point of "accidents caused by vehicles belonging to the assured," the insurer's liability should be especially limited as therein specified. The quoted language merely designates the subject of this particular clause in the contract. No other intention was indicated as intended to be conveyed, nor does the opinion in the Tramways Company case contain any language signifying that the court rendering it ascribed any different or special meaning to the provision because of the fact that the word "accidents" is used in plural form than would have resulted if the same idea had been expressed by its use in the singular, which of course could just as well have been done. There is nothing in the opinion under discussion, or in the wording of the policy, to even remotely suggest that the word "accidents," in plural form, preceding "accident" was intended to denote that the accidents in question should occur at any one time rather than upon disconnected occasions. The Tramways Company case is one in which the facts are squarely on all fours with those of that before this court. In the former it was definitely held that upon such facts two accidents, and not one, had occurred; and in so holding the court doubtless fully appreciated the significance of the words construed, quite possibly the more fully because of the brevity of the opinion, which will be quoted later. Others may disagree with the conclusion reached, but the facts of that case cannot be distinguished from those of the instant one. And this is of double importance

because, like the policy being construed here, the other was one in which the insurer bound itself as surety against the results of wrongful acts of the assured causing injuries to other persons. These cases constitute complete parallels in point of fact, and I am convinced that the court's rulings should be the same.

Although there appears no ambiguity in either the provision above discussed nor in the opinion of the court in the Tramways Company case, my interpretation of both is strengthened by the opinion in *Allen* v. *London Guarantee etc. Co., Ltd.,* 28 Terr. L. Rep. 254. My learned associates lay great stress upon the fact that in the last-named case it was held that there had been but one occurrence, which to my mind is merely an "incident to" the accidents. They ignore the important part of the decision in so far as the instant case is concerned, namely, that there were two accidents. The facts in the case of *Allen* v. *London Guarantee etc. Co., Ltd., supra,* were: The defendants assured Allen against accidents caused by his employees when in charge of his horse-drawn vehicles. Two men, Turner and Ridsdale, were injured by a cart driven by one of the assured's drivers. It was found as a fact that the cart struck Turner, who in turn was thrown against Ridsdale, and both men fell and were injured. Each brought suit against the assured for damages. It was held that, although there were two accidents, there was only one occurrence, within the meaning of the policy, and that therefore the defendants' limit of £300 liability applied. The policy provided that the total aggregate liability of the company was to be limited to the sum of £300 for all claims for compensation, costs, charges, and expenses, paid or payable either to the insured or to any claimant or any number of claimants, in respect of or arising out of any one accident *or* occurrence. This decision goes so far as to be a precedent for holding that even in the suppositious case of one car being towed by another and both being injured there would be two accidents. It limits the consideration of the question to that of the event of the injury provided such event was unexpected and unforeseen, and it is so decisive and unequivocal as to preclude the idea of harmonizing it with a holding that there was but one accident in the instant case.

There appears to be no foundation for the idea that the word "accident" is used by business men in a different sense than as defined in the cases whose definitions have been quoted, and others to which reference might be made, containing language of like import. It goes without saying that such cases involved the construction of an insurance contract made in the world of business. In each it was held that the word in question is ordinarily understood to mean an undesigned and unforeseen occurrence resulting in injury. It may well be that in some indemnity contracts the parties expressly or by necessary inference have stipulated that by their use of the word they intended to denote a general catastrophe which might include injury to more than one person. This affords no proof that the word is generally used in the realm of business in that particular sense. It is a matter so generally known as to justify courts in taking judicial knowledge of it that insurance companies write their policies in a great number of forms with the distinct purpose of satisfying the public who desire insurance against risks of every character. But we need not go beyond cases cited in the opinion of my learned associates for instances where contracts entered into in ordinary transactions between business men were so worded that courts of last resort held that the word "accident" employed therein denoted not a general catastrophe, but a particular event or occurrence. Such were the cases of *Allen* v. *London Guarantee etc. Co., Ltd.*, 28 Terr. L. Rep. 254; *Staffordshire Tramways Co., Ltd.*, v. *Sickness & Accident Assur. Assn., Ltd., supra,* and *Chapin* v. *Ocean Accident & Guaranty Corp., Ltd., supra.* The first two of the cases last enumerated contained provisions worded similarly to that under consideration in the instant case, whereas this is not true of the policies which formed the basis of the suits in *Klein* v. *Liability Assur. Corp.*, 9 Ohio App. 241, *McClung* v. *Pennsylvania Taximeter Cab Co.*, 25 Pa. Dist. Rep. 583, and *Chapelle* v. *United States Fidelity & Guaranty Co.*, 80 N. H. 481 [120 Atl. 556]. Our own supreme court has repeatedly stated its view of the meaning popularly assigned to the term "accident" to be the same as that announced in *Fenton* v. *Thorley etc., Ltd., supra,* in which it is said, "The expression 'accident' is used in the public and ordinary sense of the word as denoting an un-

looked for event which is not expected nor intended.''
(*Fidelity & Casualty Co. of New York* v. *Industrial Acc.
Com.*, 177 Cal. 614, 617 [L. R. A. 1918F, 856, 171 Pac. 429].
Citing *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686
[151 Pac. 398] ; *Southwestern Surety Ins. Co.* v. *Pillsbury,*
172 Cal. 769 [158 Pac. 762].)

Adverting now particularly to the contention of appellant
that the single act or omission of the driver of the Marmon
could not cause two simultaneous ''accidents,'' within the
proper interpretation of the phrase limiting liability to
$1,000 for loss or injury arising ''from one accident,'' if.
there was a causal connection between the two collisions,
the question presented is as to whether or not respondent's
assignor was insured against damage to all other persons
collectively to the extent of $1,000 only, if damaged by a
single mishap, or against each just and valid claim of one
or more persons to whose individual property or person
separate and distinct accidents might occur as a direct re-
sult of the operation of respondent's automobile.

A pertinent illustration of a case which would exclude
liability is *Kangas* v. *Standard Accident Ins. Co.*, 138 Minn.
418 [L. R. A. 1918B, 504, 165 N. W. 268], wherein it was
said: ''For instance, if, when the plaintiff was drawn under-
neath the passing train, a car wheel had passed over his
hand thereby severing his four fingers, one at a time, could
it be said that the event constituted four accidents and four
distinct injuries to his body?''  Had the Cadillac machine
had four parts broken by this collision and had a separate
claim been made for each, the situation presented would
have been similar to that in the case last cited.  I am in
entire accord with the holding of the Minnesota court that
the loss of all the fingers of a man's left hand would in such
a case constitute but one accident within the contemplation
of the policy of insurance there under consideration.  But
in the instant case each of two automobiles, in no way inter-
related, and owned by different persons, suffered an accident
as a consequence of negligence in the management of the
Marmon car which was insured against the liability of
its owner for injury to another.  True, there was but one
incident which superinduced the successive impacts; but as
a result of the Marmon leaving its proper course, the Over-
land was damaged ''from one accident,'' and the Cadillac

suffered damage "from one accident." The policy did not stipulate a maximum of liability to the extent of $1,000 for all damage resulting from one proximate cause; it limited the liability "with respect to claims . . . from one accident."

Mention has been made of *Southern Staffordshire Tramways Co., Ltd.,* v. *Sickness & Accident Assur. Assn., Ltd.,* 60 L. J. Q. B. 47, 63 L. T. 807 (1891), 1 Q. B. 402, 55 J. P. 168, in which the English court of appeal construed a similar policy of insurance. No clearer exposition of the principle involved and which is applicable in the case at bar can be made than by recounting in some detail the facts of that case, and quoting from the opinions of the justices therein. The tramway company was insured against personal injuries, and damage to property, caused by its vehicles, in the sum of £250 "in respect of any one accident." One of the plaintiff's tramcars overturned, injuring forty persons, as a result of which the tramway company sought to collect insurance under said policy for each of the several casualties up to the full amount for which it was indemnified and "for which the assured shall be liable." One of the questions presented at the trial was "whether the injury caused to each of the said persons constituted a separate accident within the meaning of the policy." Of the two justices hearing the case, one ruled that "any one accident" should be construed to mean that "apart from any question of the number or amount of the claims made in consequence on the insured, as between them and the insurers, *such an event* as that which happened on November 24, 1888," constituted ground for liability as to but one claimant. The other justice said: "As to the second question, the meaning of 'accident' in the phrase 'any one accident,' I regret to say that I differ from him. It is, I think, to be borne in mind that the object of the policy is to provide for the assured an indemnity against claims made upon them for injuries resulting from the negligence of their servants. This being so, I think it more appropriate to hold that the preceding word, 'accidents,' is used from the point of view of the several claimants upon the assured for injuries, each of whom claims in respect of a specific accident to himself, and not from that of the insurers, and that therefore 'any one accident' means any accident to any one claimant upon the insured. 'Any claim'

would have been a less ambiguous expression. I think, therefore, that the defendants are liable in the full amount; but, as my learned brother is not of this opinion, I withdraw my judgment."

The case was thereupon taken to the court of appeal, wherein Lord Esher, M. R., said: "I think the construction of the policy tolerably clear. The assurance is expressed to be 'as regards claims for personal injury and damage to property made against the assured in respect of accidents caused by vehicles.' These were claims for personal injury, i. e., injury to the person, and each person injured claimed for injuries in respect of an accident to his person caused by a vehicle. If several persons were injured, I think, upon the true construction of this policy, there were several accidents. I agree with the view expressed by Lawrence, J. For these reasons I think that the plaintiffs are entitled to judgment for the larger amount, and therefore the appeal must be allowed."

The other two justices concurred, each writing an individual opinion to the same effect.

Regarding the matter from the standpoint of the assured in his relation to a particular damaged car, the injury to the car constituted an accident, and a single one. It makes no difference how many other cars might have been damaged at the time by the same cause, there was one accident which caused the harm to this particular car. Regardless of the number of claims that might exist, all arising from the injury to that car, the greatest amount which the insurance company was obligated to pay for injuries to it would be $1,000. I think the policy is clearly intended to be viewed in this way, and in that light each car injured in the same general accident would, for the purposes of this contract, be regarded as having been the victim of its own accident.

A petition for a rehearing of this cause was denied by the district court of appeal on May 5, 1926, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 3, 1926.