**TRI-STATE ROOFING COMPANY, a Maryland corporation, Plaintiff,**

v.

**NEW AMSTERDAM CASUALTY COMPANY, a New York corporation, Defendant.**

**Civ. A. No. 11184.**

United States District Court W. D. Pennsylvania.

Feb. 16, 1955.

On Motion for Rehearing Dec. 15, 1955.

**194**

Ray, Coldren & Buck, Uniontown, Pa., for plaintiff.

Dickie, McCamey, Chilcote, Reif & Robinson, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This is an action for a declaratory judgment as authorized by 28 U.S.C.A. § 2201. The jurisdiction is diversity. The parties assert that there is an actual controversy between them. Plaintiff is a Maryland corporation, engaged in business in West Virginia primarily. Defendant is a New York corporation, which issued a comprehensive general liability insurance policy to the plaintiff for the year 1951. The policy was countersigned at Uniontown in this District so that the law of Pennsylvania controls the decision in this case and the parties have so stipulated.

On April 6, 1951, one of plaintiff's employees, while engaged in duties incident to a roofing job in Piedmont, West Virginia, upset a tar pot causing a fire which damaged certain properties. The employee was drawing hot pitch from a pot situate in an area behind a furniture store. When the pot upset, the hot pitch or asphalt fell on the ground and immediately burst into flames and ran through the areaway, spreading the fire so that within a matter of minutes, burning pitch spread to several buildings causing fires and resulting damage to some eleven properties before the fires were brought under control. Plaintiff has effected settlements with the owners of the damaged properties and has paid out $4,285.50. Defendant paid one loss in the sum of $950 and paid plaintiff $50, its contention being that its maximum liability is the sum of $1,000. Coverage in the policy is as follows:

"Item 3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Limits of Liability | Advance Premiums |
|---|---|---|
| A–Bodily Injury Liability | $ 50,000 each person | |
| | $100,000 each accident | $ 75.00 |
| | $_____ aggregate products | |
| | $ 1,000 each accident | |
| | $ 10,000 aggregate operations | |
| B–Property Damage Liability | $ 10,000 aggregate protective | $100.00 |
| | $_____ aggregate products | |
| | $ 10,000 aggregate contractual | |
| | Deposit Premium | $175.00" |

Plaintiff contends that defendant's limit of liability, under the facts of this case, is $10,000. Defendant says that, under the facts, there was but one accident and therefore it has paid its liability under the policy. The decisions on

this issue are few and not in accord. Plaintiff's statement of the question involved is:

"Do the words 'each accident' refer to the damage done to each person affected by the given cause or to the cause itself?"

Counsel have cited no appellate decision of any of the Pennsylvania courts construing a similar provision in an insurance contract. Plaintiff cites South Staffordshire Tramways Co., Ltd. v. The Sickness and Accident Assurance Assn., Ltd., [1891] 1 Q.B. 402. This English case seems in point. But one railroad car overturned and some forty persons were injured. The railroad company sought to collect indemnification from the insurance carriers. The Court held that the word "accident" should be construed from the point of view of the several injured claimants, and not from that of the insured, and therefore that "any one accident" meant any accident to any one claimant against the insured. There was only one cause of the accident, the overturned tramcar, but some forty persons each suffered an accident, and within the meaning of an indemnity policy there were several accidents.

A decision in 1950 in Anchor Cas. Co. v. McCaleb, 5 Cir., 178 F.2d 322, 324, favors plaintiff's construction of the words "each accident" as referring to the separate property of each claimant. It is there held that an accident occurred as to the property of each owner when a gas well blew out of control causing damage to several properties. In that case, an oil well blew in with a tremendous gas pressure. The oil ran wild for a period of fifty hours, during which time considerable quantities of mud, sand and oil were carried by air onto the bordering properties, resulting in claims for damages done to several properties. The Court says that the blowing out of the well was not a single accident but a series of events, a catastrophe, and the wording "each accident" as used in the policy must be construed from the point of view of the person whose property was injured. Judge Holmes, in that decision, cited Bouvier's Law Dictionary definition of an accident as being "an event which, in the circumstances, 'is unusual and unexpected by the person to whom it happens.'"

Since the argument, the case in the Fifth Circuit, Saint Paul-Mercury Indemnity Co. v. Rutland, decided December 15, 1954, has been noticed by the Court. Counsel did not cite it or discuss it at the argument, probably because the decision was not then published in the Federal Reporter.* The decision seems squarely in favor of plaintiff's position. Judge Holmes also wrote this opinion. It is noted, however, that there is a strong dissenting opinion by Judge Tuttle. In the decision, the facts shown are that a truck collided with a freight train, derailing the train and causing damage to sixteen cars thereof. The court decided the meaning of the words "each accident" in an indemnity policy, which apparently was quite similar to the one at Bar. The court cited the rule that requires all ambiguities in any policy to be construed most favorably to the insured, and the words used in the policy must be given the usual and ordinary signification. The court concluded that the damage to each car is a separate accident. Stress was laid on the Bouvier's Law Dictionary definition of accident as referring to the "unusual and unexpected by the person to whom it happens."

On the other hand, the defendant relies on Denham v. La Salle-Madison Hotel Co., 168 F.2d 576, 577, a case decided in 1948 by the Seventh Circuit Court of Appeals. That case arose as the result of the well-known La Salle-Madison Hotel fire. The policy there indemnified the hotel against liability for loss of and damage to property of hotel guests. The fire caused two hundred and fifty guests to leave the hotel and remain away from their rooms for a period of seventeen hours. Extensive loss through fire, smoke, water or by theft had occurred.

* Opinion recalled by court.

The policy there limited liability "for any one occurrence or catastrophe" to $10,000. The company contended that the fire constituted one occurrence. The district court held to the contrary. The Circuit Court reversed and held in favor of the company.

Defendant also cites Hyer v. Inter-Insurance Exchange, 77 Cal.App. 343, 246 P. 1055. Judge Tuttle, in his dissent in the Saint Paul-Mercury Indemnity Co. v. Rutland case, supra, also cites the Hyer case as in accord with his views. Under the circumstances, this Court is faced with very respectable authority reaching opposite conclusions. Further, the Court must decide Pennsylvania law in the absence of Pennsylvania authority on the subject.

At this point it is desirable that the paragraphs of the contract in this case, referring to the company's limits of liability, be examined. In paragraph 3, subdivisions "A" and "B", the limits of liability are stated with reference to bodily injury liability and with reference to property damage liability. It is noted that under 3–A, two of the printed lines are completed by inserting the maximum dollar liability, and in the right hand column, the amount of the advance premium is inserted. In the same way, under 3–B it is noted that four of the printed lines are completed with one line, the provision related to "aggregate products" apparently not in force in this contract. There is no attempt in 3–A and 3–B to spell out or define the precise limitations of liability. This is done in subsequent paragraphs of the contract. The paragraphs referred to and under which the premium is fixed are under the section of the policy designated "Declarations" and under which there are some seven numbered paragraphs. The policy then proceeds to a division styled "Insuring Agreements" covering four paragraphs. The next title is "Exclusions" in which some five lettered paragraphs are enumerated, with the final section designated "Conditions." It is stated that the Conditions, except Conditions 4 and 6, apply to all coverages. It is also stated that Conditions 4 and 6 apply only to coverages noted thereunder. Condition 4 is styled "Limits of Liability, Coverage A." In this paragraph are spelled out the specific terms mentioned in the declarations as to limits of liability for bodily injury. It says:

"* * * 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person in any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is, subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons in any one accident."

Thus, with reference to bodily injuries, the exact and precise language used determines the maximum liability for one and for two or more persons in any one accident. As in the cases cited favoring the plaintiff's theory, this paragraph refers to claimants who suffer injuries.

In paragraph 5, "Limits of Liability, Products," the company refers to limits of liability for bodily injury and property damage as stated in the "Declarations." The following paragraph is designated—"6. Limits of Liability, Coverage B." In this paragraph there is no spelling out of what is meant by the term "each accident." In this paragraph, "aggregate operations" is defined in the first subdivision; "aggregate protective" is defined in the second subdivision; and "aggregate contractual" in the third. Under "Limits of Liability, Coverage B," "aggregate operations" is defined:

"The limit of property damage liability stated in the declarations as

'aggregate operations' is the total limit of the company's liability for all damages arising out of injury to or destruction of property, including the loss of use thereof, caused by the ownership, maintenance or use of premises or operations rated upon a remuneration premium basis or by contractors' equipment rated on a receipts premium basis."

The final paragraph refers to the limits with respect to operations being performed away from premises owned or rented by said insured.

Thus, there is no maximum liability stated as to any one claimant, as is done in paragraph 4, coverage A. There may be several claimants with only a one thousand dollar coverage for all, under defendant's theory of the case. Under plaintiff's theory, each claimant is limited to one thousand dollars, with maximum liability fixed at $10,000. This appears to be a common sense construction of the contract.

Defendant in its brief says that the position plaintiff takes disregards the function of the aggregate coverage declarations. It is said these provisions do not exist in automobile or general liability policies, but are established in general comprehensive or protective policies issued to contractors and commercial enterprises. The defendant says that the "aggregates" established the maximum liability of the insured for each of the insured's operations during the term of the policy. Defendant says that if plaintiff suffered fifteen accidents, the defendant should pay up to $1,000 each and a total of $10,000 for all of them. Defendant says any other construction makes the unambiguous language of the policy meaningless. Moreover, according to defendant, the construction that plaintiff contends for would entail a complete revision of premiums and cost schedules.

I am unable to agree with defendant's reading of the policy provisions. It seems to me that a reading of the "Declarations," together with the paragraphs relating to "Limits of Liability" reveals an uncertain and ambiguous result with reference to the issue here. Under defendant's view, the maximum liability is only reached in this policy by the occurrence of ten individual and distinct accidents. Certainly such a construction produces a strange and unnatural result. It seems improbable that any insured would knowingly contract for such coverage. Any ambiguity or uncertainty as to the meaning of the contract must be held against the company, as the language of the policy is the language of the defendant.

With reference to the plaintiff's contention, it is said that plaintiff is entitled to a construction of the word "accident" from the point of view of the average man. In Hey v. Guarantors' Liability, etc., Co., 181 Pa. 220, 37 A. 402, the Supreme Court of Pennsylvania adopts Bouvier's Law Dictionary definition of accident and lays stress upon the words "unexpected by the person to whom it happens." See also Hamilton v. American Indemnity Co., 82 Pa.Super. 191.

The point here is that when the company desired to limit its liability for one event or occurrence as in Coverage A, it used precise language. It stated in "A" the amount of recovery which each injured person could collect. However, when it came to "B" it did not do so. Under "A" the maximum as to each accident was $100,000 and each person was limited to $50,000. Under "B" if the defendant's contention is correct, it seems that from the viewpoint of the average man the coverage is simply $1,000 each for ten accidents and that there would be no necessity to insert the definition of "aggregates" requiring three written paragraphs. I am unable to read 3–B and Coverage B of this indemnity contract together, and reach a clear understanding as to the precise meaning of the language used. Under the authorities cited favoring plaintiff's theory in this case, and also under the wording of the contract, it is believed that the plaintiff should prevail on the issue raised.

It is not necessary to set forth verbatim the agreed facts in this opinion as they are incorporated herein and this opinion shall be considered as including the Findings of Fact and Conclusions of Law in this case.

Counsel will present an appropriate order.

## On Motion for Rehearing

On February 16, 1955, this court filed a nine-page opinion in this case. In the opinion it was stated that under the authorities cited favoring plaintiff's theory in the case and under the wording of the contract, plaintiff should prevail on the issue raised. Counsel was directed to file an appropriate order. No judgment has been entered in this case. Subsequently, on April 26, 1955, counsel for defendant filed a motion to amend or set aside the opinion and for a rehearing. The opinion of this court was referred to wherein a decision of the Court of Appeals for the Fifth Circuit, Saint Paul-Mercury Indemnity Co. v. Rutland, decided December 15, 1954, No. 15184, was cited. Defendant recited the fact that on March 22, 1955 the Court of Appeals for the Fifth Circuit granted a rehearing. As this court had relied on the foregoing decision, which was favorable to the plaintiff in this case, an order was entered on May 12, 1955 by this court staying all proceedings and continuing this case generally, as this court desired to have at the final argument, the benefit of the final decision of the Court of Appeals in the case mentioned. The final decision in that case was filed on August 24, 1955, 225 F.2d 689, rehearing denied October 3, 1955. In that case the appeal was originally submitted to a panel composed of Judges Holmes, Borah and Tuttle. The panel on re-argument was composed of Circuit Judges Rives and Cameron and District Judge Dawkins, who wrote the opinion, Judge Cameron dissenting. The decision on re-argument went contrary to the decision of the first panel, relied on by this court in writing my opinion.

The issues were thereafter re-argued before me at the October term. It now convincingly appears that the weight of authority favors the defendant in this case. The opinion as filed speaks for itself and expresses the views of this court at the time it was written. However, a study of the issues and authorities after re-argument of the case and especially upon consideration of the opinion of the Court of Appeals for the Fifth Circuit, filed August 24, 1955, this court has concluded that the decision reached in the opinion was incorrect. This court must, therefore, vacate and set aside the opinion heretofore filed and direct that judgment be entered for the defendant. It will be so ordered.